Public Citizen, Inc. et al v. Louisiana Attorney Disciplinary Board et al                                              Doc. 1

FILED 08 SEP 23 10:13 USDC-LAE



# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PUBLIC CITIZEN, INC.; MORRIS BART; MORRIS BART L.L.C.; WILLIAM N. GEE, III; and WILLIAM N. GEE, III, LTD.;<br><br>Plaintiffs,<br><br>v.<br><br>LOUISIANA ATTORNEY DISCIPLINARY BOARD; BILLY R. PESNELL, in his official capacity as Chair of the Louisiana Attorney Disciplinary Board; and CHARLES B. PLATTSMIER, in his official capacity as Chief Disciplinary Counsel for the Louisiana Attorney Disciplinary Board's Office of Disciplinary Counsel;<br><br>Defendants. | Civil Action No. **08-4451**<br><br>**SECT F MAG 2**<br><br>**COMPLAINT** |

Fee __350.__
✓ Process Cald 3/sns
X Dktd _____
__ CtRmDep_____
__ Doc. No_____

Dockets.Justia.com

## INTRODUCTION

1. This suit challenges the constitutionality of amendments to the lawyer advertising provisions of the Louisiana Rules of Professional Conduct that become effective on December 1, 2008. The amended rules would bar a wide range of common advertising practices, such as the use of testimonials, actors, reenactments, and dramatizations, that are neither misleading nor otherwise harmful to consumers, and whose prohibition would be unthinkable in any other field of commerce. Plaintiffs seek declaratory and injunctive relief against enforcement of the rules under 42 U.S.C. § 1983 on the ground that they violate the First and Fourteenth Amendments to the U.S. Constitution.

## JURISDICTION

2. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## PARTIES

3. Plaintiff Public Citizen, Inc. is a nonprofit, public interest organization with approximately 70,000 members nationwide, including approximately 250 in Louisiana. Public Citizen has an interest in ensuring that its members are not injured by restrictions that deprive them of truthful, non-misleading communications regarding the availability of legal services. Public Citizen has consistently advocated for the right of consumers to receive commercial advertising and solicitations, and has litigated several of the leading cases on the subject. As an organization devoted to defending the rights of consumers, Public Citizen is particularly interested in the availability of truthful legal advertising because speech in that context not only encourages beneficial competition in the marketplace for legal services, but also educates consumers about their rights, informs them when they may have a legal claim, and enhances their access to the legal system.

4. Plaintiff Morris Bart is a resident of New Orleans and owner of the law firm Morris Bart, L.L.C. Bart was admitted to the Louisiana Bar in 1978 and continues to actively practice law in the state. In 1980, Bart became the first lawyer in Louisiana to advertise his availability to provide representation in personal injury cases on television. Bart is a member of the Louisiana Bar Association, where he served for many years on the Bar's Committee on Advertising. He has substantial trial experience in state and federal court.

5. Plaintiff Morris Bart, L.L.C. is a law firm based in New Orleans, Louisiana, founded more than twenty-five years ago by plaintiff Morris Bart. The firm now has more than twenty-five lawyers actively practicing law in offices throughout the state. The firm advertises its representation of personal injury clients in broadcast and print media and on a website at http://www.morrisbart.com/. Plaintiffs Morris Bart and Morris Bart, L.L.C. are collectively referred to here as "Bart."

6. Plaintiff William Gee, III is a resident of Lafayette, Louisiana and the owner of the law office William N. Gee, III, Ltd. Gee was admitted to the Louisiana Bar in 1984 and since then has actively practiced law in the state. He represents clients in a wide variety of personal injury cases, most of which involve maritime accidents. Gee has substantial trial experience in state and federal court.

7. Plaintiff William N. Gee, III, Ltd. is a Lafayette, Louisiana law firm founded and owned by plaintiff William N. Gee, III. The firm communicates its services to the public through broadcast media, print advertisements, and other public media. The firm also operates a website at http://www.williamgee.com/. Plaintiffs William Gee III and William N. Gee, III, Ltd. are collectively referred to here as "Gee."

8. Defendant Louisiana Attorney Disciplinary Board is the state agency responsible for administering lawyer discipline in the state. The Board investigates, prosecutes, and adjudicates all claims regarding alleged violations of the Louisiana Rules of Professional Conduct, including lawyer advertising provisions, and makes recommendations to the Louisiana Supreme Court regarding lawyer discipline.

9. Defendant Billy R. Pesnell is Chair of the Louisiana Attorney Disciplinary Board. His duties include overall management of the Board's disciplinary work.

10. Defendant Charles B. Plattsmier is Chief Disciplinary Counsel for the Louisiana Attorney Disciplinary Board's Office of Disciplinary Counsel. As such, he is primarily responsible for the prosecution of violations of the Louisiana Rules of Professional Conduct. Plattsmier's duties include screening complaints against lawyers for disciplinary violations, filing or dismissing charges, preparing recommendations for discipline, investigation and prosecution of violations, and supervision of disciplinary staff.

## FACTUAL ALLEGATIONS

### I. The Pre-Amendment Rules Governing Lawyer Advertising in Louisiana

11. The Louisiana Supreme Court has exclusive jurisdiction over lawyer discipline proceedings in Louisiana. It is also responsible for adopting the Louisiana Rules of Professional Conduct, which govern the conduct of lawyers in the state. Lawyers who violate the rules are subject to various forms of discipline, including admonition, reprimand, probation, suspension, or permanent disbarment.

12. Part 7 of the rules governs communications regarding a lawyer's services, including advertising and solicitation.

13. Rule 7.1(a) of the advertising rules, as it exists pending the December 1, 2008, effective date of the amendments, prohibits "false, misleading, or deceptive communications"

about a lawyer's services. The rule provides several examples of prohibited statements, including statements that contain material misrepresentations, omit essential facts, or imply that the lawyer can unlawfully influence the legal process.

14. The pre-amendment version of the rules also requires lawyers in certain circumstances to attach disclaimers to their advertisements. As relevant to this case, Rule 7.1(a)(vi) provides that if a lawyer's advertisement includes "an endorsement by a celebrity or public figure," it must also include a statement that the spokesperson is not a client and is being compensated. In addition, Rule 7.1(a)(vii) requires that an advertisement containing the "visual portrayal of a client by a nonclient or a lawyer by a nonlawyer" must state that the depiction is a dramatization.

15. The pre-amendment advertising rules fully vindicate Louisiana's interest in preventing false and misleading lawyer advertisements. The state has received very few or no consumer complaints regarding lawyer advertising and has disciplined very few or no lawyers for running improper ads. The state has no evidence that the pre-amendment rules are inadequate to protect consumers in the event that a lawyer runs a false or misleading advertisement.

## II. The 2008 Amendments to the Advertising Rules

16. In 2006, the Louisiana State Senate adopted a concurrent resolution stating that "the manner in which some members of the Louisiana State Bar Association are advertising their services in this state has become undignified and poses a threat to the way lawyers are perceived in this state." The resolution noted that the legislature was considering passage of Senate Bill No. 617, which would establish a committee "to address ethical concerns posed by lawyer advertising and to present a more positive message to the citizens of this state." The resolution called on the Chief Justice of the Louisiana Supreme Court to establish a committee to study lawyer advertising and to recommend changes to the advertising rules by March 1, 2007.

17. In response to the resolution, the Louisiana Supreme Court established an ad hoc committee to consider lawyer advertising. In addition, the Louisiana State Bar Association ("LSBA") referred the issue of amending the rules to its standing Rules of Professional Conduct Committee ("Rules Committee"). The Rules Committee met for the first time on September 21, 2006, to consider amendments to the rules on an expedited basis. Without conducting any factual investigation or considering any evidence, the Rules Committee voted to adopt several rules taken mostly verbatim from recent proposed amendments to New York's lawyer advertising rules that had been released for public comment several months earlier. Among other things, the Rules Committee adopted from the proposed New York rules new blanket prohibitions against

    a. "portrayal of a client by a nonclient,"

    b. "portrayal of a judge,"

    c. "reenactment of any events or scenes or pictures . . . that are not actual or authentic,"

    d. use of "a nickname, moniker, motto or trade name that implies an ability to obtain results in a matter," and

    e. use of "any spokesperson's voice or image that is recognizable to the public in the community where the advertisement appears."

18. The committee also voted to adopt, again without any consideration of evidence, several prohibitions taken in whole or substantial part from Florida's lawyer advertising rules. These included prohibitions on advertisements that

    a. "contain[] a reference or testimonial to past successes or results obtained,"

    b. "promise[] results," or

c. "compare[] the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated."

19. Between October 30 and November 9, 2006, the Rules Committee held public hearings in Shreveport, Baton Rouge, Lafayette, and New Orleans. The committee also solicited written comments. The only members of the public who attended the hearings or submitted comments were lawyers or marketers for lawyers. The majority of commenters objected to the rules as unnecessary, overbroad, or unconstitutional. Most of the remaining commenters were lawyers who supported the rules on the ground that lawyer advertising, in their opinion, was unprofessional or in poor taste. No commenters presented any evidence supporting the conclusion that the advertising methods regulated by the rules were harmful to consumers.

20. The Federal Trade Commission's Office of Policy Planning, Bureau of Consumer Protection, and Bureau of Economics submitted comments advising that the rules may hurt consumers by inhibiting competition, frustrating consumer choice, and ultimately increasing prices while decreasing quality of service. Plaintiffs Public Citizen, Inc., Morris Bart, and William Gee III also submitted comments opposing the amendments on the ground that they would constitute an unconstitutional restriction on commercial speech.

21. On January 4, 2007, New York adopted amendments to its advertising rules that differed substantially from the proposed amendments on which many of Louisiana's proposed rules were based. The final New York rules did not include the proposed prohibitions against "portrayal of a client by a nonclient," "reenactment of any events or scenes or pictures . . . that are not actual or authentic," or use of "any spokesperson's voice or image that is recognizable to the public." Instead, the New York rules imposed no restrictions on spokespeople and allowed the use of fictionalized scenes and actors as long as the advertising lawyer included certain

disclosures. The New York rules retained the earlier prohibitions on "portrayal of a judge" and use of "a nickname, moniker, motto or trade name that implies an ability to obtain results in a matter."

22. On March 23, 2007, the Rules Committee voted to recommend approval of the proposed rules to the LSBA House of Delegates. The rules as recommended included the rules that were proposed but not adopted by New York. On June 7, 2007, the LSBA House of Delegates voted to recommend to the Louisiana Supreme Court that the proposed rules be adopted. Like the Rules Committee, the LSBA House of Delegates did not consider any evidence in support of the rules.

23. On July 23, 2007, the United States District Court for the Northern District of New York declared unconstitutional New York's newly amended rules against "portrayal of a judge" and use of "a nickname, moniker, motto or trade name that implies an ability to obtain results in a matter," concluding that the evidence in support of these rules was "notably lacking." *Alexander v. Cahill*, 2007 WL 2120024 (N.D.N.Y. July 23, 2007). The case is on appeal in the U.S. Court of Appeals for the Second Circuit. After the New York decision, all the New York rules on which Louisiana's amended rules were based had either been withdrawn or declared unconstitutional.

24. On January 7, 2008, a constitutional challenge was filed against Florida's lawyer advertising rules, on which the remainder of the rules at issue here are based. As alleged in that case, Florida's rules were adopted without the support of evidence that the rules were necessary or effective to protect consumers or to advance any other legitimate state interest. The case is pending in the United States District Court for the Middle District of Florida.

25. On July 3, 2008, the Louisiana Supreme Court adopted the rules recommended by the LSBA, characterizing them in a press release as "comprehensive amendments" to the advertising rules. The rules become effective on December 1, 2008.

### III. The Amended Rules' Restrictions on Commonplace and Harmless Advertising Techniques

26. Louisiana's amended advertising rules impose a litany of restrictions that would bar a wide range of common advertising practices, such as the use of testimonials, actors, reenactments, and dramatizations, that are neither misleading nor otherwise harmful to consumers. The motivation for the amendments appears to be hostility toward advertising lawyers and regulators' subjective ideas of good taste rather than protection of consumers from any demonstrable threat.

#### A. Testimonials and References to Past Results

27. Amended Rule 7.2(c)(1)(D) prohibits advertisements that "contain[] a reference or testimonial to past successes or results obtained" except under certain circumstances when the information is requested by a client. This rule bars testimonials and references to past successes even if the information conveyed is true.

28. The plaintiff law firms frequently run advertisements with references to past successes and results, including past verdicts on behalf of clients. Many of Bart's television commercials contain testimonials of actual clients about the quality of representation in their cases. Gee's advertisements report the amount of recovery in particular cases and state that he "has recovered many millions of dollars for his clients." Both Bart and Gee include information about results in past cases on their websites.

29. Louisiana has no evidence demonstrating that this sort of truthful information is misleading or otherwise harmful to consumers. It is entirely rational for consumers looking for

representation in a case to consider, as one factor in their decisionmaking process, whether former clients were satisfied with a lawyer's services and whether the lawyer has successfully litigated similar cases in the past. Consumers regularly see commercials containing testimonials for a wide range of products and services and are able to evaluate the credibility and usefulness of this information without reaching the irrational conclusion that a lawyer's success in one case would necessarily lead to success in a different, unrelated case.

30. Louisiana's pre-amendment rules include no restrictions on testimonials or references to past results. No state other than Florida, whose advertising rules are currently facing a constitutional challenge, imposes a blanket ban on reference to past results. Louisiana has no evidence demonstrating that its pre-amendment rules and the rules of other states are inadequate to serve its interests.

31. The plaintiff law firms include disclaimers in their advertisements stating that past successes do not dictate future results. Bart's television advertisements state that "results vary and depend on the facts of each case." Gee's television advertisements include a written disclaimer stating that the "outcome of each case depends on its facts and merits," and often state verbally that "[e]very case is different." Louisiana has no evidence that requiring the use of similar disclaimers when past results are reported, as six other states currently do, would not adequately accomplish its goals.

### B.  Promises of Results

32. Amended Rule 7.2(c)(1)(E) prohibits advertisements that "promise[] results." In cases where promising results are genuinely false or misleading, Louisiana's existing rule against false, misleading, and deceptive advertising is sufficient to protect consumers. The amended rule, however, prohibits even inherently subjective statements and statements of opinion that could not mislead any reasonable consumer. An identical rule in Florida, on which this rule is based,

has been applied to prohibit such harmless statements as "attorneys righting wrongs," "people make mistakes, I help fix them," "don't let an incident like this one ruin your life," "get your defense off on the right foot quickly," "let us take care of you," "get peace of mind," "we'll steer you in the right direction," and the law firm name "Freedom Law."

33. The rule is vague and invites arbitrary and discriminatory enforcement because it is impossible for a lawyer to know what disciplinary authorities will believe "promises results." The plaintiff law firms frequently run advertisements that could be construed as promising results under this rule. For example, Gee's advertisements say things like "you need an experienced maritime attorney who can get the job done" and "get the benefits you deserve." Many of Bart's advertisements say "I'll work hard to get you all the money you deserve." Both Bart and Gee also include similar statements on their websites. Florida has applied its identical rule to prohibit statements very similar to these. Plaintiffs have a reasonable fear that they will face discipline under the rule.

34. Louisiana has no evidence establishing that consumers are confused by these sorts of statements. Reasonable consumers understand that advertisements portray the advertised product or service in a positive light and may contain statements of subjective opinion or puffery. In the context of lawyer advertisements, reasonable consumers also understand that a commercial broadcast to the general public cannot reliably promise results in a particular case, given that the advertising lawyer had no information about that case at the time the advertisement was created and broadcast.

35. Neither Louisiana's pre-amendment rules nor the rules of any state other than Florida, whose rule is currently facing a constitutional challenge on the ground that it was adopted without any evidence, prohibit advertisements that "promis[e] results." Louisiana has no

evidence demonstrating that the rules of these other states are inadequate to protect consumers. Nor does Louisiana have any evidence that requiring the use of disclaimers, as the plaintiff law firms already do, would not adequately accomplish its goals.

### C. Use of Actors, Reenactments, and Scenes

36. Several provisions of the amended rules prohibit stock advertising devices commonly used to make advertisements more interesting and effective, including use of actors, reenactments, and "scenes." Amended Rule 7.2(c)(1)(I) prohibits advertisements that "include[] a portrayal of a client by a non-client." It also prohibits the "reenactment of any events or scenes or pictures that are not actual or authentic," a provision that appears to be targeted at fictional vignettes and dramatizations, such as the staging of a generic car accident scene to illustrate the sort of services provided by a firm. Amended Rule 7.2(c)(1)(J) prohibits advertisements that "include[] the portrayal of a judge or a jury."

37. The plaintiff law firms use advertising that includes actors, reenactments, and scenes that would be prohibited by the amended rules. Bart's advertisements include reenactments of scenes such as car accidents. Bart also uses fictional vignettes, including generic accident and hospital scenes, and his website includes pictures of accident scenes and an oil rig. Gee's advertisements include a fictional vignette of insurance adjusters eating lunch as they hear about the lawsuit by an injured offshore worker, and his website also includes an image of an oil rig, as well as several images of boats.

38. Louisiana has no evidence showing that consumers are misled or otherwise harmed by these commonplace advertising devices, which consumers are used to seeing in the media every day. After decades of acculturation to television advertising, consumers are not likely to believe that a generic lawyer or judge in a courtroom scene, or a generic client in a

depiction of a car accident, depicts an actual person. Even if a consumer did suffer from one of these delusions, it would be immaterial to the consumer's choice of a lawyer.

39. Louisiana's pre-amendment rules do not regulate the use of reenactments or scenes. Louisiana has no evidence that either its pre-amendment rules or the rules of other states that do not restrict these devices are inadequate to protect consumers. The proposed New York rule on which Louisiana's amended rule is based was modified before adoption to allow use of these devices when accompanied by a disclosure. Although New York retained its restriction on the portrayal of judges, that rule was subsequently declared unconstitutional on the ground that it was not supported by any evidence.

40. Louisiana's pre-amendment rules allow the "visual portrayal of a client by a nonclient or a lawyer by a nonlawyer" as long as the advertisement states that the portrayal is a dramatization. Accordingly, both Bart and Gee include the word "dramatization" in their advertisements. When actors are involved, Gee's advertisements state "dramatization[s] by actors." Louisiana has no evidence that these disclaimers have not been sufficient to accomplish its goals.

### D. Mottos and Trade Names

41. Amended Rule 7.2(c)(1)(L) prohibits advertisements that "utiliz[e] a nickname, moniker, motto or trade name that states or implies an ability to obtain results in a matter." Comparable rules in other states have led to wide-ranging, unpredictable, and arbitrary results. The rule is vague and invites arbitrary and discriminatory enforcement because it is impossible for a lawyer to know what disciplinary authorities will believe "implies an ability to obtain results."

42. Many of Bart's advertisements include the motto "One Call, That's All," and his website includes the motto "One Click, That's It." Bart also advertises his selection as a "Super

-13-

Lawyer" by the Super Lawyers magazine. Gee's advertisements and website include the motto "Tell them you mean business." Based on the vagueness of the rule and the broad application of similar rules by other states, plaintiffs have a reasonable fear that they will face discipline for continuing to use these statements in their advertising.

43. Louisiana's pre-amendment rules do not restrict the sorts of statements prohibited by this amendment. Louisiana has no evidence that its pre-amendment rules are inadequate to protect consumers. The New York rule on which this rule is based has already been declared unconstitutional on the ground that it was not supported by any evidence.

44. Louisiana has no evidence that the use of disclaimers, such as those identified in paragraph 31, above, would be insufficient to accomplish its objectives.

E. **Use of Spokespeople**

45. The amended rules prohibit or restrict the use of spokespeople in lawyer advertisements on television and radio. Amended Rule 7.5(b)(1)(C) bans the use of celebrity spokespeople by prohibiting the use of "any spokesperson's voice or image that is recognizable to the public in the community where the advertisement appears." Amended Rule 7.5(b)(2)(C) regulates the use of spokespeople who are neither celebrities nor lawyers, providing that these spokespeople must "provide a spoken disclosure identifying the spokesperson as a spokesperson and disclosing that the spokesperson is not a lawyer."

46. The plaintiff law firms include statements in their advertising that would violate this rule. Bart's advertisements include former clients as spokespeople without stating that they are not lawyers. Gee's advertisements use Robert Vaughn, an actor who is most famous for his role as the spy Napoleon Solo in the 1960's television series *The Man from U.N.C.L.E.*

47. Louisiana has no evidence that the use of spokespeople is harmful to consumers or that the rules of other states, which overwhelmingly allow the use of spokespeople, have been inadequate to prevent false and misleading advertisements.

48. Louisiana has no evidence that its pre-amendment rule, which allows use of celebrity spokespeople with a disclaimer, is inadequate to accomplish its purposes. Gee's advertisements already include the disclaimer: "Robert Vaughn, a non-client, is a paid spokesman for William Gee." The clients in Bart's advertisements are self evidently not lawyers, and a disclaimer would serve no purpose.

## CLAIMS FOR RELIEF

49. Louisiana's amended rules prohibit common and innocuous advertising techniques that have no real potential to deceive consumers. The cumulative effect of the amendments greatly magnifies their individual flaws, resulting in the virtual prohibition of visually interesting and informative television advertising by lawyers.

50. If allowed to take effect, the amended rules would force plaintiffs to pull many of their advertisements off the air and to develop new advertisements at significant expense. As a result, they would lose the benefit of public recognition of their existing slogans, spokespeople, and advertising campaigns. In the future, plaintiffs would be forced to produce advertisements that are dull, ineffective, and uninformative, thus seriously hampering their ability to communicate their messages to consumers and to locate potential clients.

51. The advertising techniques prohibited by the rules serve the important function of attracting consumers' attention and communicating information to those who may need legal representation. The rules' burdensome prohibitions on speech will reduce the effectiveness of

lawyer advertisements, chill lawyers from engaging in advertising, and prohibit the communication of useful and relevant information.

52. The amendments will injure Louisiana consumers, including Public Citizen's Louisiana members, by preventing them from receiving truthful, non-misleading information about their legal rights and available legal services.

53. Louisiana has no studies, factual findings, or other evidence demonstrating that the amendments address anything other than imaginary problems, that the pre-amendment rules are not adequately serving the state's interests, or that lesser alternatives such as disclaimers could not have accomplished the state's goals. The amendments appear to be motivated solely by a general distaste for certain forms of lawyer advertising and by hostility toward lawyers who assist injured consumers.

54. The amendments restrict, unduly burden, and chill the exercise of the rights of commercial speech secured by the First Amendment of the U.S. Constitution, as applied to the states through the Fourteenth Amendment to the U.S. Constitution.

55. The rules are too vague to provide guidance about what kinds of advertisements are prohibited and invite arbitrary and discriminatory enforcement in violation of the First Amendment to the U.S. Constitution and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

56. For the foregoing reasons, plaintiffs request that this Court

    a. declare unconstitutional and issue a preliminary and permanent injunction against enforcement of the following rules of the Louisiana Rules of Professional Conduct, as amended effective December 1, 2008: Rule 7.2(c)(1)(D), (E), (I) & (L), the prohibition on "portrayal of a judge or a jury" in Rule 7.2(c)(1)(J), and Rule 7.5(b)(1)(C) & (b)(2)(C);

b. award plaintiffs their costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

c. grant any additional relief to which plaintiffs are entitled.

Dated: Sep. 23, 2008

Respectfully submitted,

_____
Dane S. Ciolino, T.A., La. Bar No. 19,311
DANE S. CIOLINO, LLC
P.O. Box 850848
New Orleans, LA 70185-0848
Phone: (504) 834-8519
Fax: (504) 324-0143
Email: dciolino@loyno.edu

*Counsel for Plaintiffs Public Citizen, Inc., William N. Gee, III, and William N. Gee, III, Ltd.*

Terry B. Loup, La. Bar No. 8823
MORRIS BART, LLC
20th Floor
909 Poydras Street
New Orleans, Louisiana 70112
Telephone: 504-599-3254

*Counsel for Plaintiffs Morris Bart and Morris Bart, L.L.C.*

Gregory A. Beck
DC Bar No. 494479, pro hac vice to be filed
Brian Wolfman
DC Bar No. 427491, pro hac vice to be filed
PUBLIC CITIZEN LITIGATION GROUP
1600 20th St., NW
Washington, DC 20009
Phone: (202) 588-1000
Fax: (202) 588-7795
Email: gbeck@citizen.org
       brian@citizen.org

*Counsel for All Plaintiffs*