# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PUBLIC CITIZEN, INC., *et al.*, | Master Docket: |
| Plaintiffs, | Civil Action No. 08-4451 |
| v. | Relates To: |
| | Civil Action No. 08-4994 |
| LOUISIANA ATTORNEY DISCIPLINARY BOARD, *et al.*, | SEC. F (JUDGE FELDMAN) |
| Defendants. | MAG. 2 (MAG. JUDGE WILKINSON) |

## OPPOSITION OF ALL PLAINTIFFS TO DEFENDANTS' MOTION
## FOR A CONTINUANCE

Plaintiffs oppose defendants' motion for a continuance. Defendants ask for an indefinite continuance of the trial and of their time to respond to plaintiffs' motion for summary judgment, giving as the only reason their desire for "further study" of the lawyer advertising rules. Mot. to Continue at 2. This is the second time the state has moved back the rules' effective date. The first time, when the state moved the date from December 1, 2008, to April 1, 2009, plaintiffs agreed to withdraw their motion for a preliminary injunction and instead to seek an expedited final judgment on the merits. This time, plaintiffs cannot agree to further delay. The challenged rules have already created a broad chilling effect on commercial speech in the state, and, contrary to defendants' assertions, the Louisiana Supreme Court has given no indication that the rules are

-1-

likely to change. Rather, the state's request for time to study the rules appears to be an effort to put the case on hold long enough for it to come up with evidence to defend the rules' constitutionality. The state, however, has already had ample opportunity to develop a record in support of its rules and has failed to do so. Indeed, the state's professed need for "further study" is a virtual concession that the rules are currently unsupported by evidence and should therefore be declared unconstitutional. For these reasons, the motion should be denied.

## ARGUMENT

I. **The State's Intent to Engage in "Further Study" Does Not Resolve the First Amendment Issues.**

Defendants' motion is predicated on the assumption that the rules "may be modified" before the new October 1, 2009, effective date. Mot. to Continue at 2. Even if the state's assumption were correct, however, it would not resolve the First Amendment issues here. Regardless of what, if any, changes the Louisiana Supreme Court eventually adopts, lawyers are already making decisions about advertising that will run far beyond the effective date. For example, lawyers throughout the state will soon be submitting their ads for inclusion in the Yellow Pages, which will remain in print for an entire year. Other lawyers will develop advertising that will run for several years, or even longer. In the case of new firms, lawyers will be forced to choose slogans and logos under the rules that could last the life of the firm. As plaintiffs explained in their declarations in support of their motion for a preliminary injunction, creation of an advertising campaign is time-consuming and expensive, and lawyers are likely to avoid developing ads that even arguably run afoul of the amended rules. *See* Mot. for Prelim. Inj., Bart Decl. ¶¶ 5-11; Gee Decl. ¶¶ 4-9.

Under these circumstances, delaying federal adjudication "might itself effect the impermissible chilling of the very constitutional right [plaintiffs] seek[] to protect." *Zwickler v.*

*Koota*, 389 U.S. 241, 252 (1967); s*ee also Hallendale Prof'l Fire Fighters v. Hallendale*, 922 F.2d 756, 760 (11th Cir. 1991) (noting the risk "that free speech will be chilled even before the law, regulation, or policy is enforced"). Even if lawyers never face discipline—either because they have adequately complied with the rules or because the rules are revoked before the effective date—they will still have suffered the injury of self-censorship. *See Houston Chronicle Pub. Co. v. League City*, 488 F.3d 613, 618 (5th Cir. 2007) ("Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement."); *see also Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008). Considerations of judicial economy are admittedly important, but they do not outweigh the irreparable deprivation of constitutional rights caused by allowing the chilling effect to continue. *See Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 795 (1988) ("The First Amendment does not permit the State to sacrifice speech for efficiency."); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

In any case, the state has given no reason to think that the Louisiana Supreme Court will revoke the challenged rules before the effective date. The Court has not signaled an intent to narrow the rules, said what changes it is considering, or even explained what further study it intends to conduct. On the contrary, the Court's press release reiterates its continued reliance on the same illegitimate interests—its claimed interest in lawyer "dignity" and in protecting the public from "potentially misleading" speech—that are the basis for plaintiffs' constitutional challenge. *Compare* Louisiana Supreme Court, Press Release (Mot. to Continue, Exh. B) ("[L]awyer advertising in the state has become *undignified*.") (emphasis added), *with Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 648 (1985) (holding that the state may not restrict lawyer advertising because "some members of the bar might find [it] beneath their *dignity*")

(emphasis added); Press Release, *supra* (citing the "need to . . . protect the public from . . . *potentially misleading* forms of lawyer advertising") (emphasis added), *with In re RMJ*, 455 U.S. 191, 203 (1982) ("[T]he states may not place an absolute prohibition on certain types of *potentially misleading* information . . . if the information also may be presented in a way that is not deceptive.") (emphasis added). Any modifications to the rules adopted in furtherance of these illegitimate interests will themselves be unconstitutional.[1]

## II. The Court Has Jurisdiction to Decide the Case, and There Is No Basis for Abstention.

Despite their assertion that a decision on the constitutionality of the current rules would be "advisory," Mot. to Continue at 2, defendants do not argue that the Court lacks jurisdiction to decide the case as currently presented. The U.S. Supreme Court rejected that argument in *Virginia v. American Booksellers Association*, 484 U.S. 383 (1988). There, the state argued that a First Amendment challenge to a statute was "premature" because it was "made before the statute became effective." *Id.* at 392. The Supreme Court, however, was "not troubled by the pre-enforcement nature of [the] suit," noting that the law, as here, would have forced the plaintiffs to "take significant and costly compliance measures" and that "the alleged danger of this statute [was], in large measure, one of self-censorship." *Id.* at 392-93; *see also ACLU v. Johnson*, 194 F.3d 1149, 1154-55 (10th Cir. 1999) (holding plaintiffs had standing to challenge a statute on First Amendment grounds before the statute's effective date). Similarly, courts routinely

---

[1] Even if the state does eventually change the rules, a decision on the constitutionality of the rules as currently drafted may still be necessary. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (internal quotations omitted). Unless the state can show that there is no reasonable probability that it will reinstitute the challenged rules, the constitutionality of those rules would still need to be decided. *See id.*; *see Duplantis v. Bonvillain*, 675 F. Supp. 331, 333 n.2 (E.D. La. 1987) (holding that repeal of an ordinance did not render a federal-court challenge to the ordinance moot).

entertain pre-enforcement challenges to restrictions on commercial speech. *See, e.g.*, *Fla. Bar v. Went For It*, 515 U.S. 618 (1995); *Edenfield v. Fane*, 507 U.S. 761 (1993); *Jacobs v. Fla. Bar*, 50 F.3d 901 (11th Cir. 1995); *Harrell v. Fla. Bar*, 2008 WL 596086 (M.D. Fla. Feb. 29, 2008); *Alexander v. Cahill*, No. 07-cv-117, 2007 WL 2120024 (N.D.N.Y. July 23, 2007), *appeal argued*, No. 07-3677 (2d Cir. Jan. 22, 2009); *Schwartz v. Welch*, 890 F. Supp. 565 (S.D. Miss. 1995).

In the case on which defendants rely, *Bolline v. City of New Orleans*, 757 F. Supp. 715 (E.D. La. 1991), the Court abstained under *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941). *Bolline* was a federal-law challenge to a city ordinance that also faced a parallel state-law challenge in the Louisiana courts. *Id.* at 717. *Bolline* noted that if the state-law claims prevailed, it would no longer have to decide the federal-law issues. *Id.* at 719. Abstention was warranted, the Court held, because "the disposition of a question of state law [could] eliminate or narrow the scope of the federal constitutional issue." *Id.* Unlike *Bolline*, there is no issue of state law here, much less a difficult and unsettled question that would justify abstention.

As *Bolline* noted, *Pullman* abstention is available "under limited circumstances, only after the most careful scrutiny by the abstaining court." *Id.* at 719; *see also Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981) ("[A]bstention is the exception rather than the rule . . . ."). In First Amendment cases, *Pullman* abstention is almost never appropriate. *See Pruett v. Harris County Bail Bond Bd.*, 499 F.3d 403, 408 n.2 (5th Cir. 2007) ("[W]e rarely abstain from ruling on federal constitutional law."); *O'Hair v. White*, 675 F.2d 680, 694 (5th Cir. 1982) (holding that courts should abstain "only in the most extraordinary circumstances when fundamental rights . . . are involved"). The fact that the state *may* adopt amendments to the challenged rules at some indefinite point in the future is not enough to justify abstention. That argument was rejected by

the court in *Harrell*, 2008 WL 596086, at *10. There, the state argued that the court should abstain from deciding a challenge to a lawyer advertising rule because an amendment to the rule was "currently under consideration." *Id.* at *9. The court acknowledged that the defendants "*may* delete [the challenged rule] in its entirety," but also noted that the state "*may* replace the challenged rule with a rule equally offensive to Plaintiffs . . . , *may* decide to leave the challenged rule unchanged, *may* change the rule and then revert back to the prior rule, or *may* engage in any pattern of decision that [it] find[s] to be suitable." *Id.* at *10. It wrote: "The Court is duty-bound to address properly raised constitutional issues, and Defendants' non-committal remark that the Bar may alter a challenged rule does not relieve this Court of its duties." *Id.*

## III. The State Has Had Ample Opportunity to "Study" Its Rules.

The only reason given by the state to continue the case indefinitely is its desire to "further study" the advertising rules that it has already enacted. Mot. to Continue at 2. The state, however, already spent almost two years—from the first meeting of the Louisiana Supreme Court's advertising committee on September 15, 2006, to the Court's approval of the amendments on June 26, 2008—engaged in what it characterized as a "lengthy study" of the rules. Press Release, *supra*. At this late date, just one week before the scheduled hearing on summary judgment, the time for further study has passed.

The state cannot claim to have been unaware of its First Amendment burden during its consideration of the rules. The Supreme Court has repeatedly struck down similar bans on various forms of lawyer advertising for lack of supporting evidence. *See Ibanez v. Fla. Dep't of Bus. & Prof'l Reg.*, 512 U.S. 136 (1994); *Peel v. Attorney Registration and Disciplinary Comm'n*, 496 U.S. 91 (1990); *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466 (1988); *Zauderer*, 471 U.S. 626; *In re RMJ*, 455 U.S. 191. Indeed, the record shows that the Louisiana Supreme Court knew of its burden, but nevertheless decided to forego any effort to meet it. At its September 15,

2006, meeting, the Court's committee discussed "the possibility of creating and disseminating a survey on advertising" to "gauge the public's views on attorney advertising." Minutes, Supreme Court Comm., Sept. 15, 2006 (Mot. Summ. J., Exh. 26), at 3. Rather than conducting the survey, however, the committee decided to first obtain a different survey recently completed by Florida. *Id.* When that survey turned out to be "not helpful," the committee "defer[red] a final decision on conducting a survey," this time in the hope that a "sufficient record . . . to obviate the need for a survey" would be developed at the LSBA's planned public hearings. Minutes, Supreme Court Comm., Oct. 23, 2006 (Mot. Summ. J., Exh. 27), at 3. The "public hearings," which were never announced to the public, also failed to develop any evidence in support of the rules. Nevertheless, the state adopted the rules without further study.

In addition to its lengthy amendment process, the state has now had more than five months since the complaint was filed to develop evidence in support of its rules. During that time, plaintiffs agreed to withdraw their motion for a preliminary injunction, and the state was able to complete a public opinion survey (albeit a seriously flawed one). Only because that survey failed to achieve the state's desired result is it now asking for time to engage in "further study."

The core problem with the state's argument is that it gets the First Amendment process backward. Under the Supreme Court's commercial speech case law, a state may restrict commercial speech only in response to a serious and intractable problem, and even then only when other approaches have failed, that is, as a "last—not first—resort." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002). Here, the state started by drafting a set of amendments based on its own subjective ideas of dignity, and only then considered how it would come up with a "sufficient record" to justify the result. If the state had no evidence that the rules were

necessary or effective, it should never have adopted them. Similarly, if the state now realizes that it lacks evidence in support of the rules, it should repeal the rules immediately instead of leaving them in place to chill speech while it considers whether they serve any legitimate purpose.

**CONCLUSION**

For the foregoing reasons, the state's motion for a continuance should be denied.

Dated: February 26, 2009

Respectfully submitted,

 /s/Gregory A. Beck
Gregory A. Beck
DC Bar No. 494479, pro hac vice
Brian Wolfman
DC Bar No. 427491, pro hac vice
PUBLIC CITIZEN LITIGATION GROUP
1600 20th St., NW
Washington, DC  20009
Phone:  (202) 588-1000
Fax:  (202) 588-7795
Email: gbeck@citizen.org
       brian@citizen.org

*Counsel for Plaintiffs Public Citizen, Inc., Morris Bart, Morris Bart, L.L.C., William N. Gee, III, and William N. Gee, III, Ltd.*

 /s/ James M. Garner
James M. Garner, La. Bar No. 19589, T.A.
Joshua S. Force, La. Bar No. 21975
Christopher T. Chocheles, La. Bar No. 26848
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras St., 28th Floor
New Orleans, LA   70112
Telephone:  (504) 299-2100
Facsimile: (504) 299-2300

*and*

Terry B. Loup, La. Bar No. 8823
MORRIS BART, L.L.C.
20th Floor

 /s/ Ernest E. Svenson
Ernest E. Svenson, La. Bar No. 17164
THE SVENSON LAW FIRM, LLC
123 Walnut Street, Suite 1001
New Orleans, LA 70118
Phone: (504) 208-5199
Fax: (504) 754-7874
Email: esvenson@svensonlaw.com

*and*

Scott G. Wolfe , Jr.
The Wolfe Law Offices, LLC
4821 Prytania St.
New Orleans , LA 70115
Phone: 504-894-9653
Fax: 866-761-8934
Email: scott@wolfelaw.com

*Counsel for Plaintiffs Scott G. Wolfe, Jr. and Wolfe Law Group, LLC*

Dane S. Ciolino, T.A., La. Bar No. 19311
DANE S. CIOLINO, LLC
P.O. Box 850848
New Orleans, LA 70185-0848
Phone: (504) 834-8519
Fax: (504) 324-0143
Email: dciolino@loyno.edu

*Counsel for Plaintiffs Public Citizen, Inc., William N. Gee, III, and William N. Gee, III, Ltd.*

909 Poydras Street
New Orleans, Louisiana 70112
Phone: (504) 599-3254
Fax: (504) 599-3380
Email: tloup@morrisbart.com

*Counsel for Plaintiffs Morris Bart and Morris Bart, L.L.C.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 26, 2009, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Gregory A. Beck
GREGORY A. BECK