# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS DIVISION

| | |
|---|---|
| PUBLIC CITIZEN, INC.; MORRIS BART; MORRIS BART L.L.C.; WILLIAM N. GEE, III; and WILLIAM N. GEE, III, LTD.; | |
| Plaintiffs, | Civil Action No. 08-4451, c/w 08-4994 All Cases |
| v. | SEC. F (JUDGE FELDMAN) MAG. 2 (MAG. JUDGE WILKINSON) |
| LOUISIANA ATTORNEY DISCIPLINARY BOARD; BILLY R. PESNELL, in his official capacity as Chair of the Louisiana Attorney Disciplinary Board; and CHARLES B. PLATTSMIER, in his official capacity as Chief Disciplinary Counsel for the Louisiana Attorney Disciplinary Board's Office of Disciplinary Counsel; | **FIRST AMENDED COMPLAINT** |
| Defendants. | |

## INTRODUCTION

1. This suit challenges the constitutionality of amendments to the lawyer advertising provisions of the Louisiana Rules of Professional Conduct that become effective on October 1, 2009. The amended rules would bar or severely restrict a wide range of common advertising practices, such as the use of testimonials, actors, reenactments, and dramatizations, that are neither misleading nor otherwise harmful to consumers, and whose prohibition would be

-1-

unthinkable in any other field of commerce. Plaintiffs seek declaratory and injunctive relief against enforcement of the rules under 42 U.S.C. § 1983 on the ground that they violate the First and Fourteenth Amendments to the U.S. Constitution.

## JURISDICTION

2. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## PARTIES

3. Plaintiff Public Citizen, Inc. is a nonprofit, public interest organization with approximately 65,000 members nationwide, including approximately 270 in Louisiana. Public Citizen has an interest in ensuring that its members are not injured by restrictions that deprive them of truthful, non-misleading communications regarding the availability of legal services. Public Citizen has consistently advocated for the right of consumers to receive commercial advertising and solicitations and has litigated several of the leading cases on the subject. As an organization devoted to defending the rights of consumers, Public Citizen is particularly interested in the availability of truthful legal advertising because speech in that context not only encourages beneficial competition in the marketplace for legal services, but also educates consumers about their rights, informs them when they may have a legal claim, and enhances their access to the legal system.

4. Plaintiff Morris Bart is a resident of New Orleans and owner of the law firm Morris Bart, L.L.C. Bart was admitted to the Louisiana Bar in 1978 and continues to actively practice law in the state. In 1980, Bart became the first lawyer in Louisiana to advertise his availability to provide representation in personal injury cases on television. Bart is a member of the Louisiana Bar Association, where he served for many years on the Bar's Committee on Advertising. He has substantial trial experience in state and federal court.

5.      Plaintiff Morris Bart, L.L.C. is a law firm based in New Orleans, Louisiana, founded more than twenty-five years ago by plaintiff Morris Bart. The firm now has more than twenty-five lawyers actively practicing law in offices throughout the state. The firm advertises its representation of personal injury clients in broadcast and print media and on a website at http://www.morrisbart.com/. Plaintiffs Morris Bart and Morris Bart, L.L.C. are collectively referred to here as "Bart."

6.      Plaintiff William N. Gee, III is a resident of Lafayette, Louisiana and the owner of the law office William N. Gee, III, Ltd. Gee was admitted to the Louisiana Bar in 1984 and since then has actively practiced law in the state. He represents clients in a wide variety of personal injury cases, most of which involve maritime accidents. Gee has substantial trial experience in state and federal court.

7.      Plaintiff William N. Gee, III, Ltd. is a Lafayette, Louisiana law firm founded and owned by plaintiff William N. Gee, III.  The firm communicates its services to the public through broadcast media, print advertisements, and other public media. The firm also operates a website at http://www.williamgee.com/. Plaintiffs William N. Gee, III and William N. Gee, III, Ltd. are collectively referred to here as "Gee."

8.      Defendant Louisiana Attorney Disciplinary Board is the state agency responsible for administering lawyer discipline in the state. The Board investigates, prosecutes, and adjudicates all claims regarding alleged violations of the Louisiana Rules of Professional Conduct, including lawyer advertising provisions, and makes recommendations to the Louisiana Supreme Court regarding lawyer discipline.

9.      Defendant Billy R. Pesnell is Chair of the Louisiana Attorney Disciplinary Board. His duties include overall management of the Board's disciplinary work.

10. Defendant Charles B. Plattsmier is Chief Disciplinary Counsel for the Louisiana Attorney Disciplinary Board's Office of Disciplinary Counsel. As such, he is primarily responsible for prosecuting alleged violations of the Louisiana Rules of Professional Conduct. Plattsmier's duties include screening complaints against lawyers for disciplinary violations, filing or dismissing charges, preparing recommendations for discipline, investigation and prosecution of violations, and supervision of disciplinary staff.

## FACTUAL ALLEGATIONS

**I.  The Pre-Amendment Rules Governing Lawyer Advertising in Louisiana**

11. The Louisiana Supreme Court has exclusive jurisdiction over lawyer discipline proceedings in Louisiana. It is also responsible for adopting the Louisiana Rules of Professional Conduct, which govern the conduct of lawyers in the state. Lawyers who violate the rules are subject to various forms of discipline, including admonition, reprimand, probation, suspension, or permanent disbarment.

12. Part 7 of the rules governs communications regarding a lawyer's services, including advertising and solicitation.

13. Rule 7.1(a) of the advertising rules, as it exists pending the October 1, 2009, effective date of the amendments, prohibits "false, misleading, or deceptive communications" about a lawyer's services. The rule provides several examples of prohibited statements, including statements that contain material misrepresentations, omit essential facts, or imply that the lawyer can unlawfully influence the legal process.

14. The pre-amendment version of the rules also requires lawyers in certain circumstances to include disclosures in their advertisements. As relevant to this case, Rule 7.1(a)(vi) provides that if a lawyer's advertisement includes "an endorsement by a celebrity or public figure," it must also include a statement that the spokesperson is not a client and is being

compensated. In addition, Rule 7.1(a)(vii) requires that an advertisement containing the "visual portrayal of a client by a nonclient or a lawyer by a nonlawyer" must state that the depiction is a dramatization.

15. The pre-amendment advertising rules fully vindicate Louisiana's interest in preventing false and misleading lawyer advertisements. The state has received very few or no consumer complaints regarding lawyer advertising and has disciplined very few or no lawyers for running improper ads. The state has no evidence that the pre-amendment rules are inadequate to protect consumers in the event that a lawyer runs a false or misleading advertisement.

## II. The 2008 Amendments to the Advertising Rules

16. In 2006, the Louisiana State Senate adopted a concurrent resolution stating that "the manner in which some members of the Louisiana State Bar Association are advertising their services in this state has become undignified and poses a threat to the way lawyers are perceived in this state." The resolution noted that the legislature was considering passage of Senate Bill No. 617, which would establish a committee "to address ethical concerns posed by lawyer advertising and to present a more positive message to the citizens of this state." The resolution called on the Chief Justice of the Louisiana Supreme Court to establish a committee to study lawyer advertising and to recommend changes to the advertising rules by March 1, 2007.

17. In response to the resolution, the Louisiana Supreme Court referred the issue of amending the rules to the Rules of Professional Conduct Committee ("Rules Committee") of the Louisiana State Bar Association ("LSBA"). The Rules Committee met for the first time on September 21, 2006, to consider amendments to the rules on an expedited basis. Without conducting any factual investigation or considering any evidence, the Rules Committee voted to adopt several rules taken mostly verbatim from recent proposed amendments to New York's lawyer advertising rules that had been released for public comment several months earlier.

Among other things, the Rules Committee adopted from the proposed New York rules new blanket prohibitions against

      a. "portrayal of a client by a nonclient,"

      b. "portrayal of a judge,"

      c. "reenactment of any events or scenes or pictures . . . that are not actual or authentic,"

      d. use of "a nickname, moniker, motto or trade name that implies an ability to obtain results in a matter," and

      e. use of "any spokesperson's voice or image that is recognizable to the public in the community where the advertisement appears."

18. The committee also voted to adopt, again without any consideration of evidence, several prohibitions taken in whole or substantial part from Florida's lawyer advertising rules. These included prohibitions on advertisements that

      a. "contain[] a reference or testimonial to past successes or results obtained," or

      b. "promise[] results."

19. Between October 30 and November 9, 2006, the Rules Committee held public hearings in Shreveport, Baton Rouge, Lafayette, and New Orleans. The committee also solicited written comments. The only members of the public who attended the hearings or submitted comments were lawyers or marketers for lawyers. The majority of commenters objected to the rules as unnecessary, overbroad, or unconstitutional. Most of the remaining commenters were lawyers who supported the rules on the ground that lawyer advertising, in their opinion, was

unprofessional or in poor taste. No commenters presented any evidence supporting the conclusion that the advertising methods regulated by the rules were harmful to consumers.

20. The Federal Trade Commission's Office of Policy Planning, Bureau of Consumer Protection, and Bureau of Economics submitted comments advising that the rules may hurt consumers by inhibiting competition, frustrating consumer choice, and ultimately increasing prices while decreasing quality of service. Plaintiffs Public Citizen, Inc., Morris Bart, and William Gee also submitted comments opposing the amendments on the ground that they would constitute an unconstitutional restriction on commercial speech.

21. On January 4, 2007, New York adopted amendments to its advertising rules that differed substantially from the proposed amendments on which many of Louisiana's proposed rules were based. The final New York rules imposed no restrictions on spokespeople and allowed the use of fictionalized scenes and actors as long as the advertising lawyer included certain disclosures. The New York rules retained the earlier prohibitions on "portrayal of a judge" and use of "a nickname, moniker, motto or trade name that implies an ability to obtain results in a matter."

22. On March 23, 2007, the Rules Committee voted to recommend approval of the proposed rules to the LSBA House of Delegates. The rules as recommended included the rules that were proposed but not adopted by New York. On June 7, 2007, the LSBA House of Delegates voted to recommend to the Louisiana Supreme Court that the proposed rules be adopted. Like the Rules Committee, the LSBA House of Delegates did not consider any evidence in support of the rules.

23. On July 23, 2007, the United States District Court for the Northern District of New York declared unconstitutional New York's newly amended rules against "portrayal of a

judge" and use of "a nickname, moniker, motto or trade name that implies an ability to obtain results in a matter," concluding that the evidence in support of these rules was "notably lacking." *Alexander v. Cahill*, 2007 WL 2120024 (N.D.N.Y. July 23, 2007). The case is on appeal in the U.S. Court of Appeals for the Second Circuit. After the New York decision, all the New York rules on which Louisiana's amended rules were based had either been withdrawn or declared unconstitutional.

24. On July 3, 2008, the Louisiana Supreme Court adopted the rules recommended by the LSBA, characterizing them in a press release as "comprehensive amendments" to the advertising rules. The Court set December 1, 2008, as the effective date of the rules.

25. On September 28, 2008, plaintiffs filed their original complaint in this case. In response, the Louisiana Supreme Court on October 31, 2009, deferred the effective date of the amendments until April 1, 2009.

26. While the amendments were on hold, the LSBA commissioned a survey on the attitudes of consumers and lawyers toward lawyers and lawyer advertising. The survey questions did not address most of the rules challenged here and did not uncover any cases of consumers being misled. On the contrary, large majorities of consumers who responded to the survey stated that they would not be misled by stock advertising devices like testimonials, images of judges or juries, or depictions of accident scenes.

27. After the survey was complete, the Louisiana Supreme Court on February 18, 2009, ordered that the effective date of the amendments be deferred until October 1, 2009, "to allow the LSBA and the Court to further study certain rules in light of the constitutional challenges that have been raised." On March 11, 2009, the Louisiana Supreme Court asked the Rules Committee to review several of the challenged rules and report back by May 1, 2009.

28. On April 15, 2009, the Rules Committee informed the Court that it "remained of the strong opinion" that the amendments were necessary and appropriate. The committee asserted that the rules against testimonials and references to past results, promises of results, and portrayals of judges and juries target advertising that is "inherently misleading" and recommended that those rules not be modified. However, the committee recommended that the Court modify the rules against celebrity spokespeople, reenactments, scenes, and actors playing clients to allow those devices when accompanied by a disclaimer or disclosure. The committee recommended that the Court require the disclaimer or disclosure to be both "spoken aloud" and written in "a print size at least as large as the largest print size used in the advertisement."

29. On June 4, 2009, the Louisiana Supreme Court adopted the Rules Committee's recommendations, leaving the October 1, 2009, effective date in place.

### III. The Amended Rules' Restrictions on Commonplace and Harmless Advertising Techniques

30. Louisiana's amended advertising rules impose a litany of restrictions on common advertising practices, such as the use of testimonials, actors, reenactments, dramatizations, slogans, and spokespeople, that are neither misleading nor otherwise harmful to consumers. The motivation for the amendments appears to be hostility toward advertising lawyers and regulators' subjective ideas of good taste rather than protection of consumers.

#### A. Testimonials and References to Past Results

31. Amended Rule 7.2(c)(1)(D) prohibits advertisements that "contain[] a reference or testimonial to past successes or results obtained" except under certain circumstances when the information is requested by a client. This rule bars testimonials and references to past successes even if the information conveyed is true.

32. The plaintiff law firms frequently run advertisements with references to past successes and results, including past verdicts on behalf of clients. Many of Bart's television commercials contain testimonials of actual clients about the quality of representation in their cases. Gee's advertisements report the amount of recovery in particular cases and state that he "has recovered many millions of dollars for his clients." Both Bart and Gee include information about results in past cases on their websites. Plaintiffs have a reasonable fear that they will face discipline under the rule.

33. Louisiana has no evidence demonstrating that this sort of truthful information is misleading or otherwise harmful to consumers. It is entirely rational for consumers looking for representation in a case to consider, as one factor in their decisionmaking process, whether former clients were satisfied with a lawyer's services and whether the lawyer has successfully litigated similar cases in the past. Consumers regularly see commercials containing testimonials for a wide range of products and services and are able to evaluate the credibility and usefulness of this information without reaching the irrational conclusion that a lawyer's success in one case would necessarily lead to success in a different, unrelated case.

34. Louisiana's pre-amendment rules include no restrictions on testimonials or references to past results. No state other than Florida, which itself has no evidence in support of its rule, imposes a blanket ban on reference to past results. Louisiana has no evidence demonstrating that its pre-amendment rules and the rules of the overwhelming majority of other states are inadequate to serve its interests.

35. The plaintiff law firms include disclaimers in their advertisements stating that past successes do not dictate future results. Bart's television advertisements state that "results vary and depend on the facts of each case." Gee's television advertisements include a written

disclaimer stating that the "outcome of each case depends on its facts and merits," and often state verbally that "[e]very case is different." Louisiana has no evidence that requiring the use of similar disclaimers when past results are reported, as six other states currently do, would not adequately accomplish its goals.

### B. Promises of Results

36. Amended Rule 7.2(c)(1)(E) prohibits advertisements that "promise[] results." In cases where promising results would be genuinely false or misleading, Louisiana's existing rule against false, misleading, and deceptive advertising is sufficient to protect consumers. The amended rule, however, prohibits even inherently subjective statements and statements of opinion that could not mislead any reasonable consumer. An identical rule in Florida, on which this rule is based, has been applied to prohibit such harmless statements as "attorneys righting wrongs," "people make mistakes, I help fix them," "don't let an incident like this one ruin your life," "get your defense off on the right foot quickly," "let us take care of you," "get peace of mind," "we'll steer you in the right direction," and the law firm name "Freedom Law."

37. The rule is vague and invites arbitrary and discriminatory enforcement because it is impossible for a lawyer to know what disciplinary authorities will believe "promises results." The plaintiff law firms frequently run advertisements that could be construed as promising results under this rule. For example, Gee's advertisements say things like "you need an experienced maritime attorney who can get the job done" and "get the benefits you deserve." Many of Bart's advertisements say "I'll work hard to get you all the money you deserve." Both Bart and Gee also include similar statements on their websites. Florida has applied its identical rule to prohibit statements very similar to these. Plaintiffs have a reasonable fear that they will face discipline under the rule.

38. Louisiana has no evidence establishing that consumers are confused by these sorts of statements. Reasonable consumers understand that advertisements portray the advertised product or service in a positive light and may contain statements of subjective opinion or puffery. In the context of lawyer advertisements, reasonable consumers also understand that a commercial broadcast to the general public cannot reliably promise results in a particular case, given that the advertising lawyer had no information about that case at the time the advertisement was created and broadcast.

39. Neither Louisiana's pre-amendment rules nor the rules of any state other than Florida prohibit advertisements that "promis[e] results." Neither Louisiana nor Florida has evidence demonstrating that the rules of these other states are inadequate to protect consumers. Nor do they have any evidence that requiring the use of disclaimers, as the plaintiff law firms already do, would not adequately accomplish their goals.

### C. Mottos and Trade Names

40. Amended Rule 7.2(c)(1)(L) prohibits advertisements that "utiliz[e] a nickname, moniker, motto or trade name that states or implies an ability to obtain results in a matter." Comparable rules in other states have led to wide-ranging, unpredictable, and arbitrary results. The rule is vague and invites arbitrary and discriminatory enforcement because it is impossible for a lawyer to know what disciplinary authorities will believe "implies an ability to obtain results."

41. Many of Bart's advertisements include the motto "One Call, That's All," and his website includes the motto "One Click, That's It." Bart also advertises his selection as a "Super Lawyer" by the Super Lawyers magazine. Gee's advertisements and website include the motto "Tell them you mean business." Based on the vagueness of the rule and the broad application of

similar rules by other states, plaintiffs have a reasonable fear that they will face discipline for continuing to use these statements in their advertising.

42. Louisiana's pre-amendment rules do not restrict the sorts of statements prohibited by this amendment. Louisiana has no evidence that its pre-amendment rules are inadequate to protect consumers. The New York rule on which this rule is based has already been declared unconstitutional on the ground that it was not supported by any evidence.

43. Louisiana has no evidence that the use of disclaimers, such as those identified in paragraph 35, above, would be insufficient to accomplish its objectives.

### D. Use of Actors, Reenactments, and Scenes

44. Several provisions of the amended rules impose restrictions on stock advertising devices that are commonly used to make advertisements more interesting and effective and that are not likely to mislead anyone. Amended Rule 7.2(c)(1)(I) requires a "disclaimer" in advertisements that "include[] a portrayal of a client by a non-client" or "reenactment of any events or scenes or pictures that are not actual or authentic." The rule appears to be targeted at fictional vignettes and dramatizations, such as the staging of a generic car accident scene to illustrate the sort of services provided by a firm. In addition, Amended Rule 7.2(c)(1)(J) imposes a blanket prohibition on ads that "include[] the portrayal of a judge or a jury," regardless of whether the ad contains a disclaimer or disclosure.

45. Any disclaimers or disclosures required by the rules must be in a print size "at least as large as the largest print size used in the advertisement or unsolicited written communication." Because advertisements typically include a law firm's name or slogan in large text as an attention-getting device, this requirement will make it impossible to run many advertisements, including relatively small ads where space is at a premium. It will also force

lawyers to create advertisements that are ugly and ineffective and will reduce the amount of useful information that the ads can convey to consumers.

46. When used on television or in other forms of electronic communication, the rules also require an additional spoken disclaimer. This disclaimer is unnecessary and redundant. It will also make it difficult or impossible to run many short advertisements and will reduce the amount of useful information that ads can convey to consumers.

47. The plaintiff law firms use advertising that includes actors, reenactments, and scenes that would be effectively prohibited by the amended rules. Bart's advertisements include reenactments of scenes such as car accidents. Bart also uses fictional vignettes, including generic accident and hospital scenes, and his website includes pictures of accident scenes and other sorts of scenes. Gee's advertisements include a dramatization of insurance adjusters eating lunch as they hear about a lawsuit brought by an injured offshore worker. It would be impractical or impossible for plaintiffs to include the burdensome disclaimers and disclosures required by the rules in these ads. Plaintiffs have a reasonable fear that they will face discipline if they continue to run these or similar advertisements.

48. Louisiana has no evidence showing that consumers are misled or otherwise harmed by these commonplace advertising devices, which consumers are used to seeing in the media every day. After decades of acculturation to television advertising, consumers are not likely to believe that dramatizations—such as the depiction of a generic client in a car accident, or a generic lawyer or judge in a courtroom scene—are actual footage of past events. Even if a consumer did suffer from one of these delusions, it would be immaterial to the consumer's choice of a lawyer.

49. No other state requires such burdensome disclaimers and disclosures in lawyer advertising. Louisiana has no evidence to show that less intrusive disclaimers and disclosures, such as those required by other states, could not have accomplished its goals with substantially less impact on speech.

### E. Use of Spokespeople

50. Amended Rule 7.5(b)(1)(C) requires a "disclosure" in advertisements that include a "non-lawyer spokesperson speaking on behalf of the lawyer or law firm." As with ads containing actors, reenactments, and scenes, the required disclosure must be the same size as the largest text on the screen and must be both written and verbal. The disclosure must include statements "identifying the spokesperson as a spokesperson, disclosing that the spokesperson is not a lawyer and disclosing that the spokesperson is being paid to be a spokesperson, if paid."

51. The plaintiff law firms include statements in their advertising that would violate this rule. Bart's advertisements include former clients as spokespeople without stating that they are not lawyers. Gee's advertisements use Robert Vaughn, an actor who is most famous for his role as the spy Napoleon Solo in the 1960's television series *The Man from U.N.C.L.E.* Plaintiffs have a reasonable fear that they will face discipline if they continue to run these or similar advertisements.

52. The rule will force lawyers to create advertisements that are ugly and ineffective, and will reduce the amount of useful information that the ads can convey to consumers.

53. It is readily apparent in Gee's ads that Robert Vaughn is a spokesperson. Moreover, the clients in Bart's advertisements are self-evidently not lawyers. Louisiana has no evidence that these ads are misleading to consumers. Nor can Louisiana show that it could not have accomplished its goals with less intrusive means, such as the more reasonable disclosures required by other states.

## CLAIMS FOR RELIEF

54. Louisiana's amended rules restrict common and innocuous advertising techniques that have no real potential to deceive consumers. The cumulative effect of the amendments greatly magnifies their individual flaws, resulting in the virtual prohibition of visually interesting and informative television advertising by lawyers.

55. If allowed to take effect, the amended rules would force plaintiffs to pull many of their advertisements off the air and to develop new advertisements at significant expense. As a result, they would lose the benefit of public recognition of their existing slogans, spokespeople, and advertising campaigns. In the future, plaintiffs would be forced to produce advertisements that are dull, unattractive, ineffective, and uninformative, thus seriously hampering their ability to communicate their messages to consumers and to locate potential clients.

56. The advertising techniques restricted by the rules serve the important function of attracting consumers' attention and communicating information to those who may need legal representation. The rules' burdensome restrictions on speech will reduce the effectiveness of lawyer advertisements, chill lawyers from engaging in advertising, and prohibit the communication of useful and relevant information.

57. The amendments will injure Louisiana consumers, including Public Citizen's Louisiana members, by preventing them from receiving truthful, non-misleading information about their legal rights and available legal services.

58. Louisiana has no studies, factual findings, or other evidence demonstrating that the amendments address anything other than imaginary problems, that the pre-amendment rules are not adequately serving the state's interests, or that less-restrictive alternatives could not have accomplished the state's goals. The amendments appear to be motivated solely by a general

distaste for certain forms of lawyer advertising and by hostility toward lawyers who assist injured consumers.

59. The amendments restrict, unduly burden, and chill the exercise of the rights of commercial speech secured by the First Amendment of the U.S. Constitution, as applied to the states through the Fourteenth Amendment to the U.S. Constitution.

60. The rules are too vague to provide guidance about what kinds of advertisements are prohibited and invite arbitrary and discriminatory enforcement in violation of the First Amendment to the U.S. Constitution and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

61. For the foregoing reasons, plaintiffs request that this Court

    a. declare unconstitutional and issue a preliminary and permanent injunction against enforcement of the following rules of the Louisiana Rules of Professional Conduct, as amended effective October 1, 2009: Rule 7.2(c)(1)(D), (E), (I) & (L), the prohibition on "portrayal of a judge or a jury" in Rule 7.2(c)(1)(J), Rule 7.2(c)(10), and Rule 7.5(b)(2)(C);

    b. award plaintiffs their costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

    c. grant any additional relief to which plaintiffs are entitled.

Dated: June 26, 2009    /s/Gregory A. Beck
    Gregory A. Beck, pro hac vice
    Brian Wolfman, pro hac vice
    PUBLIC CITIZEN LITIGATION GROUP
    1600 20th Street, NW
    Washington, DC 20009
    Telephone: (202) 588-1000
    Facsimile: (202) 588-7795
    *Attorneys for all Plaintiffs*

Dane S. Ciolino, T.A., La Bar No. 19311
DANE S. CIOLINO, L.L.C.
P.O. Box 850848
New Orleans, Louisiana 70185-0848
Telephone: (504) 834-8519
Facsimile: (504) 324-0143
*Attorney for Plaintiffs Public Citizen, Inc., William N. Gee, III, and William N. Gee, III, Ltd.*


Terry B. Loup, La. Bar No. 8823
MORRIS BART, L.L.C.
20th Floor
909 Poydras Street
New Orleans, Louisiana 70112
Telephone: (504) 599-3254
*Attorney for Plaintiffs Morris Bart and Morris Bart, L.L.C.*

and

James M. Garner, La. Bar No. 19589
Joshua S. Force, La. Bar No. 21975
Christopher T. Chocheles, La. Bar No. 26848
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street
Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
*Attorneys for Plaintiffs Morris Bart and Morris Bart, L.L.C.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 26, 2009, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record in this case.

    /s/Gregory A. Beck
   Gregory A. Beck