UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCOTT G. WOLFE, JR.; and <br> WOLFE LAW GROUP, L.L.C. | |
| | Master Docket: <br> Civil Action No. 08-4451 |
| Plaintiffs, | |
| | Relates To: |
| v. | Civil Action No. 08-4994 |
| LOUISIANA ATTORNEY <br> DISCIPLINARY BOARD; BILLY R. <br> PESNELL, et al. | |
| Defendants. | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT AND MOTION TO DISMISS[1]**

**Introduction**

Wolfe's[2] complaint is not based on a fear that certain advertisements might subject it to disciplinary action. Instead, Wolfe challenges the Regulations[3] because this October, regardless of an advertisement's ultimate compliance, the Regulations will unconstitutionally restrict Wolfe's commercial and non-commercial speech.

For this reason, the Defendants' Motion to Dismiss and Motion for Summary Judgment should be denied.

---

[1] This memorandum opposes the Motion to Dismiss and Motion for Summary Judgment because Defendants largely repeat its ripeness and standing argument in both motions.
[2] Plaintiffs Scott Wolfe, Jr. and Wolfe Law Group, L.L.C. are collectively referred to herein as "Wolfe" or "Plaintiff(s)"
[3] The term Regulations refers to Rule 7.6, and as applied through Rule 7.6(d), Rules 7.2(a), 7.2(c)(10), 7.2(c)(11), and 7.7.

Page 1 of 10

## Wolfe's Challenges are Not Hypothetical, Wolfe has Standing and the Controversy is Ripe for Review

**An Examination of Plaintiffs' Challenges, And Why They Are Not Speculative**

The Defendants portray Wolfe's complaint as speculative, arguing the challenge is based on a fear that unidentified future advertisements might subject Wolfe to disciplinary action.[4]

The Defendants' understanding of Wolfe's complaint, however, is misplaced.

Wolfe contends that the Regulations were drafted without an examination of actual Internet promotion, and as a result, causes concrete and imminent injury to Wolfe, which can *only* be redressed through a favorable judicial decision.

The concrete and particularized injuries are presented in Wolfe's Motion for Summary Judgment where, through its exhibits, Wolfe provides the following sampling of recent "computer-accessed communications:"

- Pay-Per-Click Advertising Campaign through Google;
- A guest "blog" posted on a third-party law blog on May 15, 2009;
- A guest blog posted on a third-party law blog on February 13, 2009;
- A public comment posted on February 9, 2009, to a third-party blog posting about construction law;
- A public comment posted on June 12, 2008 to a third-party blog post about mechanic's liens;
- Wolfe Law Group's Facebook profile page, as printed on July 13, 2009; and
- Scott Wolfe Jr.'s Twitter Profile page, as printed on July 13, 2009.[5]

This sampling was offered to present two primary arguments: (1) That Rule 7.6(d)[6] is "incompatible" to the most popular way of advertising online: Pay-Per-Click

---

[4] See Defendants Memorandum Supporting their Motion to Dismiss, p. 5. Emphasis in original.
[5] Exhibits 10 and 12, and Scott Wolfe Jr.'s verification, attached to Plaintiffs Memorandum Supporting their Motion for Summary Judgment, is attached hereto as Exhibit 1.
[6] Including its incorporation of Rules 7.7, 7.2(a) and 7.2(c)10) and 7.2(c)(11)

Web Campaigns;[7] and (2) That Rule 7.6(d)'s broad language unconstitutionally obstructs Wolfe's online speech.[8]

The compliancy of Wolfe's advertisements is irrelevant to Wolfe's complaint because the instant controversy is not based on a fear of potential discipline for non-complying advertisements. Instead, the controversy is that the Regulations unconstitutionally restrict, "chill" or obstruct Wolfe's ability to advertise speak freely on the Internet.

**Plaintiffs Meet Standing Requirements**

To establish standing, a plaintiff must show: (1) It has suffered an "injury in fact" that is concrete and particularized, and actual or imminent; (2) The injury is fairly traceable to the challenged action of the defendant; and (3) It is likely the injury will be redressed by a favorable decision.[9] Plaintiff contends it meets all three elements.

Injury-in-Fact

The injury-in-fact inquiry does not require a plaintiff to expose itself to enforcement to challenge a statute.[10] Rather, standing exists when there is realistic danger of injury from a statute's operation, or if plaintiff asserts an intention to engage in specific conduct affected by a constitutional interest.[11]

---

[7] See argument in Plaintiff's Memorandum in Support of its Motion for Summary Judgment, and the Memorandum's Exhibit 9.
[8] The example communications are made with significant motive of pecuniary gain, see Wolfe Verification to Plaintiffs Motion for Summary Judgment.
[9] Lujan v. Defendants of Wildlife, 504 U.S. 555,560 (1992); White's Place, Inc. v. Glover, 222 F.3d 1327, 1329 (11th Cir. 2000)
[10] Schwartz v. Welch, 890 F. Supp. 565, 570 (S.D. Miss. 1995); see also Jacobs v. The Florida Bar, 50 F.3d 901, 904 (11th Cir. Fla. 1995)
[11] Id.

Wolfe's Motion for Summary Judgment demonstrates the concrete and particularized injuries it will sustain if the Regulations take effect. These injuries include: (i) Being unable to advertise through the web's most popular method of online advertising, pay-per-click ads; (ii) Being financially obstructed from marketing its practice through online social networks, blogs, forum comments, and related computer-accessed communications; (iii) Having its non-commercial speech subject to review by Defendants; and (iv) Being charged filing fees to safely engage in discourse that is not pure commercial speech.

The injuries-in-fact are actual and imminent and will be sustained when the Regulations take effect in October. Injuries will occur regardless of whether Wolfe's future advertisements are deemed compliant.

The Injury is Traceable to the Regulations

Defendants cite <u>Warth v. Seldin</u> and <u>Lujan v. Defenders of Wildlife</u> to support its contention that Wolfe cannot trace its injuries to the Regulations.[12] These two cases, however, regard circumstances where a plaintiff has sought to assert the legal claims and injuries of third parties, and not themselves.[13]

The current facts are distinguishable from <u>Warth</u> and <u>Lujan</u>. In this matter, Wolfe is asserting legal claims for its own injuries, and the causation for Wolfe's injuries is the Regulations. The causation is direct and clear, and the injuries would not be sustained but for the imposition of the Regulations.

---

[12] Cited in Defendants' Memorandum Supporting its Motion to Dismiss all Plaintiffs on page 10. Cites: <u>Warth v. Seldin</u>, 422 U.S. 490, 504 (1975); <u>Lujan</u>, supra.
[13] Sprint Communs. Co., L.P. v. APCC Servs., 128 S. Ct. 2531, 2544 (U.S. 2008)

<u>Injuries Will Be Redressed, And Can Only Be Redressed, With A Favorable Decision From This Court</u>

This Court finally inquires whether the injury can be redressed by a favorable judicial decision declaring the Regulations unconstitutional. Wolfe avers this is the only way to remedy the imminent and concrete injuries.

A favorable judicial determination would prevent Wolfe from suffering the above-listed injuries, and correct the problem with the Regulations' incompatibility with Internet advertisements.

Aside from a favorable decision from this Court, the Plaintiffs have no other way to seek redress for their injuries. Defendants' suggestion that Wolfe go through its "advisory opinion" service underscores its misunderstanding of Wolfe's complaint, in that Wolfe is injured by the advisory service itself.

**This Controversy is Ripe for Judicial Determination**

Determination of whether an issue is ripe for judicial review depends upon (i) the fitness of the issues for judicial decision; and (ii) the hardship of the parties of withholding court consideration.[14]

The constitutional harms alleged by Wolfe are not hypothetical and are fit for judicial decision, and Wolfe will face hardship if the claims are not adjudicated.[15]

Moreover, upon consideration of the other ripeness factors from Sierra Club, briefed by Defendants, all factors weigh in favor of this controversy being ripe for

---

[14] Anderson v. Sch. Bd. of Madison County, 517 F.3d 292, 296 (5th Cir. 2008); Felmeister v. Office of Attorney Ethics, 856 F.2d 529 (3rd Cir. 1988).
[15] See argument that Plaintiffs have standing, *supra.*

adjudication.[16] Delayed review would cause hardship to Wolfe, judicial review would not interfere with any further administrative action, and the courts would not benefit from any further factual development on the issues presented.

Without a judicial decision, Wolfe will suffer the above-listed concrete and particularized harms when the Regulations take effect.[17] While Wolfe may seek an advisory opinion as to the content of certain advertisements, there are no avenues for Wolfe to seek administrative review of the Regulations themselves, and accordingly, the Plaintiffs cannot administratively seek redress of its imminent injuries and this matter is ripe for judicial review.

In support of its argument that Wolfe's claims are not ripe, Defendants cite Felmeister v. Office of Attorney Ethics.[18] The Felmeister decision, however, is inconsistent with other case law,[19] is not from this jurisdiction,[20] and is distinguishable from the facts at hand.[21]

Unlike in Felmeister, here Wolfe challenges the rules based on concrete injuries it will sustain when the Regulations take effect. While the Felmeister plaintiff had the

---

[16] Defendants Memorandum in Support of its Motion to Dismiss All Defendants, p. 15-16, citing Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998).
[17] The alleged harms are above-listed, and more fully set forth in the Plaintiffs Memorandum Supporting its Motion for Summary Judgment.
[18] Defendants Memorandum in Support of its Motion for Summary Judgment, citing: 856 F.2d 529 (3rd Cir. 1988).
[19] Beaulieu v. City of Alabaster, 454 F.3d 1219, 1226-1227 (11th Cir. Ala. 2006), concluding that plaintiff is not required to exhaust his or her administrative remedies in order to bring a First Amendment claim.
[20] See contrary analysis in Schwartz v. Welch, 890 F.Supp. 560, 570-71 (S.D. Miss 1995),
[21] In Alexander v. Cahill, the U.S. District Court in New York rejected the Defendant's Motion to Dismiss based on the *Burford* abstention doctrine. The court distinguished Felmeister by stating "this case involves only federal claims challenging the constitutionality of the attorney-advertising rules. It does not involve complex questions of state law or a subject-matter for which the state provides an elaborate review system."

ability to submit its advertisement for an advisory review, that opportunity is not available for Wolfe here.

A review of the Pay-Per-Click Advertising method illustrates the features of this case that distinguish it from Felmeister.

The utility of Pay-Per-Click Advertisements is that they are easy to change, contain multiple variations and are very inexpensive to operate. Further, pay-per-click ads have limited space for the advertiser's message.

Rule 7.7's evaluation process destroys the utility of the pay-per-click advertising method. The $175.00 filing fee, and requirement to file each ad variation, is incompatible with the method of advertising and financially obstructs Wolfe from using the medium to advertise. In addition, Rule 7.2(a)'s required information and 7.2(c)(10) required disclaimers would eclipse the small space available to Wolfe in the advertisement.

Indeed, Plaintiffs' uncontested expert, Christopher Schultz, opined that the Regulations are incompatible with the Pay-Per-Click Advertising scheme.[22]

The enforcement of a rule regulating online advertisements that is "incompatible" with the Internet's most popular method of advertising online will prevent Wolfe from advertising on the medium, which is a concrete and particularized harm that will be sustained when the Regulations take effect.

---

[22] See Plaintiffs Motion for Summary Judgment, Exhibit 9

## The Regulations Chill or Obstruct Non-Commercial Speech

In their Memorandum, the Defendants argue the rules do not reach non-commercial speech since – "on their face" – they strictly regulate advertisements only.[23] The argument is in spite of the Regulations actual language.

Despite Defendants' suggestion, the Rules do not state at its outset that they are addressed to "permissible forms of advertising." Moreover, instead of defining the term advertisement, the Regulations broadly restrict both "advertisements" *and* "communications."

The applicability to both advertisements and communications is not a drafting accident. In fact, instead of drafting the rules to focus on advertisements, the drafting committee made a concerted effort to include other types of communications.[24]

Rule 7.6(d) does no better to restrict the rules applicability to "advertisements." While the term "advertisement" is used in the rule's heading, it applies to "all computer-accessed communications," a very broadly defined term.

Recently, the Supreme Court added "when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain" to Rule 7.6(d), but for the reasons discussed more fully in Plaintiff's Motion for Summary Judgment, this too fails to resolve its reach to non-commercial speech.

Exhibit 1 to this Memorandum contains a number of "computer-accessed communications" made by Wolfe, and the associated verification confirms they were

---

[23] Memorandum supporting the Defendants Motion for Summary Judgment, p. 13-14
[24] *Emphais ours.* See Exhibit 3. The drafting committee's meeting minutes illustrate that "the Committee directed Richard Lemmler to make the rules consistent by adding "advertisement *or communication*" throughout the proposed rules."

made with a "significant motive of pecuniary gain."  While these communications are regulated, they are not true "advertisements."

The best example from Exhibit 1 is an article titled <u>Should You Care About The Employee Free Choice Act?</u>  The article is accessed by the use of a computer, was posted on a third-party website, concerns Wolfe's services, and was made with a significant motive of pecuniary gain.[25]  The article squarely falls within the review of Rule 7.6(d), would require 7.2(a) information, and would be subject to evaluation under Rule 7.7.

The article, however, is not an advertisement.  Further, since the article comments on a bill pending in the United States Congress that could substantially affect many of Wolfe's clients and colleagues, Wolfe's attempt to educate web visitors about the bill is a form of political speech.

On the one hand, if these Exhibit 1 communications are deemed commercial speech, the cost of Rule 7.7's evaluations would financially and practically obstruct Wolfe from engaging in this type of online commentary.

On the other hand, if the communications were recognized as not purely commercial speech, application of the Regulations to the speech would not survive the heightened level of scrutiny.

---

[25] See Scott Wolfe verification to Plaintiffs' Motion for Summary Judgment.

## Conclusion

Wolfe's challenge is not hypothetical or based on a fear of discipline. Wolfe will suffer concrete and particularized injuries immediately when the Regulations take effect. The only way to redress these injuries is through a favorable judicial determination.

For the reasons expressed in this Memorandum, the Defendants' Motion to Dismiss and Motion for Summary Judgment should be denied.

| CERTIFICATE OF SERVICE<br><br>A copy of this motion was served electronically upon all counsel of record on this date: July 21, 2009.<br><br>/s   Scott G. Wolfe Jr.<br>Scott G. Wolfe Jr. | Respectfully submitted,<br><br>Ernest E. Svenson (La. Bar 17164)<br>Svenson Law Firm, L.L.C.<br>123 Walnut Street, Suite 1001<br>New Orleans, LA 70118<br>Tel: 504-208-5199  Fax: 504-324-0453<br><br>  /s  Scott G Wolfe Jr<br>Scott G. Wolfe Jr. (La Bar 30122)<br>Wolfe Law Group, LLC<br>4821 Prytania Street<br>New Orleans, LA 70115<br>Tel:  504-894-9653  Fax: 866-761-8934<br>Counsel for Plaintiffs |