UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PUBLIC CITIZEN, INC., ET AL.                CIVIL ACTION

VERSUS                                      NO. 08-4451

LOUISIANA ATTORNEY DISCIPLINARY             SECTION "F"
BOARD, ET AL.

<u>ORDER AND REASONS</u>

The pending motions orbit one central question: Can
Louisiana's proposed Rules regarding lawyer advertising withstand
Constitutional scrutiny?

Before the Court are the defendants' Motion to Dismiss and
Motion for Summary Judgment; the Motion of Public Citizen, Inc., et
al. for Summary Judgment; and the Motion of Scott G. Wolfe, Jr. et
al for Summary Judgment. The defendants' Motion to Dismiss is
DENIED, and the motions for summary judgment are GRANTED IN PART
and DENIED IN PART, subject to the reasons below. The parties
shall submit a Judgment within ten days that is consistent with
this Order and Reasons.

## **Background**

The Louisiana legislature adopted a concurrent resolution in
2006, stating that "the manner in which some members of the
Louisiana State Bar Association are advertising their services in
this state has become undignified and poses a threat to the way

1

lawyers are perceived." The resolution called on the Louisiana Supreme Court to establish a committee to study lawyer advertising and to recommend changes to Part 7 of the Louisiana Rules of Professional Conduct, which governs lawyer advertising, by March 1, 2007. The Louisiana Supreme Court created the Committee to Study Attorney Advertising, which obtained a copy of a Florida survey that gauged the public's views on attorney advertising.

The LSBA Rules of Professional Conduct Committee met four times between September 21, 2006 and October 6, 2006 to assemble a series of proposed amendments to lawyer advertising Rules. The Supreme Court Committee then met on October 23, 2006 to consider the proposed amendments and voted to endorse them. The LSBA Committee also held four public hearings on the proposed Rule changes between November 2, 2006 and November 16, 2006. After all that, the Louisiana House of Delegates voted on June 7, 2007 to accept the LSBA Committee's proposal and recommended that the Louisiana Supreme Court incorporate the proposed Rules into the Rules of Professional Conduct. On July 3, 2008, the Louisiana Supreme Court adopted the Rules, to become effective on December 1, 2008.

Plaintiffs filed suit and sought a preliminary injunction against enforcement of the Rules in Fall 2008. In response, the Louisiana Supreme Court postponed the effective date of the Rules until April 1, 2009. During that time, the LSBA commissioned a

survey on the attitudes of consumers and lawyers toward lawyers and lawyer advertising in Louisiana. After the completion of the survey, on February 18, 2009, the Louisiana Supreme Court ordered that the effective date of the new Rules be deferred until October 1, 2009 "to allow the LSBA and the Court to further study certain Rules in light of the constitutional challenges that have been raised." On March 11, 2009, the Louisiana Supreme Court asked the LSBA Committee to review several of the challenged Rules.

The LSBA Committee reported back on April 15, 2009, and recommended that the high court modify the Rules prohibiting celebrity spokespeople, non-authentic scenes, and actors playing clients - so as to permit such commercials if accompanied by a special disclaimer or disclosure. On June 4, 2009, the Louisiana Supreme Court adopted the LSBA Committee's final recommendations as drafted and changed during the investigative process; October 1, 2009 is the effective date of the new Rules.

Public Citizen, Inc., Morris Bart, Morris Bart LLC, William N. Gee, III, and William N. Gee, III, Ltd. ("Public Citizen plaintiffs") challenge the following Rules:

**Rule 7.2(c)(1)(D)**: prohibiting as false, misleading, or deceptive communications that "contain[] a reference or testimonial to past successes or results obtained, except as allowed in the Rule regulating information about a lawyer's services provided upon request."

**Rule 7.2(c)(1)(E)**: prohibiting as false, misleading, or deceptive communications that "promise[] results."

**Rule 7.2(c)(1)(I)**: prohibiting as false, misleading, or deceptive communications that "include[] a portrayal of a client by a non-client without disclaimer of such, as required by Rule 7.2(c)(10), or the depiction of any events or scenes or pictures that are not actual or authentic without disclaimer of such, as required by Rule 7.2(c)(10)."

**Rule 7.2(c)(1)(J)**: prohibiting as false, misleading, or deceptive communications that "include[] the portrayal of a judge or a jury."[1]

**Rule 7.2(c)(1)(L)**: prohibiting as false, misleading, or deceptive communications that "utilize[] a nickname, moniker, motto or trade name that states or implies an ability to obtain results in a matter."

**Rule 7.2(c)(10)**: "Any words or statements required by these Rules to appear in an advertisement or unsolicited written communication must be clearly legible if written or intelligible if spoken aloud.

"All disclosures and disclaimers required by these Rules shall

---

[1] This Rule contains additional prohibitions that the plaintiffs do not challenge: "the portrayal of a lawyer by a non-lawyer, the portrayal of a law firm as a fictionalized entity, the use of a fictitious name to refer to lawyers not associated together in a law firm, or otherwise implies that lawyers are associated in a law firm if that is not the case."

be clear and conspicuous.  Written disclosures and disclaimers shall use a print size at least as large as the largest print size used in the advertisement or unsolicited written communication, and, if televised or displayed electronically, shall be displayed for a sufficient time to enable the viewer to easily see and read the disclosure or disclaimer.  Spoken disclosures and disclaimers shall be plainly audible and spoken at the same or slower rate of speed as the other spoken content of the advertisement.  All disclosures and disclaimers used in advertisements that are televised or displayed electronically shall be both spoken aloud and written legibly."

**Rule 7.5(b)(2)(c)**: allowing "a non-lawyer spokesperson speaking on behalf of the lawyer or law firm, as long as that spokesperson shall provide a spoken and written disclosure, as required by Rule 7.2(c)(10), identifying the spokesperson as a spokesperson, disclosing that the spokesperson is not a lawyer and disclosing that the spokesperson is being paid to be a spokesperson, if paid."

Scott G. Wolfe, Jr. and Wolfe Law Group, LLC ("Wolfe plaintiffs") challenge the following Rules, as they relate to Internet-based advertising and communications:

**Rule 7.2(a)**: requiring that advertisements and unsolicited written communications contain the name of at least one lawyer responsible for their content and one or more bona fide office

location(s), by city or town, of the lawyer or lawyers who will actually perform the services advertised.

**Rule 7.2(c)(10)**: specifying the disclosure requirements: all written disclosures shall be in a type as large as the largest print size used in the advertisement and all advertisements that are televised or displayed electronically shall be both spoken aloud and written legibly.

**Rule 7.2(c)(11)**: "No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm."

**Rule 7.6(a)**: defining "computer-accessed communications" as "information regarding a lawyer's or law firm's services that is read, viewed, or heard directly through the use of a computer. Computer-accessed communications include, but are not limited to, Internet presences such as home pages or World Wide Web sites, unsolicited electronic mail communications, and information concerning a lawyer's or law firm's services that appears on World Wide Web search engine screens and elsewhere."

**Rule 7.6(c)(3)**: requiring that unsolicited electronic mail communications state "LEGAL ADVERTISEMENT" in the subject line.

**Rule 7.6(d)**: "**Advertisements.** All computer-access communications concerning a lawyer's or law firm's services, other

than those subject to subdivisions (b)[2] and (c)[3] of this Rule, are subject to the requirements of Rule 7.2[4] when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.

**Rule 7.7**: explaining the duties of the LSBA Committee and the evaluation process for lawyer advertising, including a fee for filing a proposed advertisement for evaluation.

Defendants move to dismiss plaintiffs' complaints; they also seek summary judgment. In their motion to dismiss, defendants assert this Court does not have subject matter jurisdiction to hear the claims because the case is not ripe for adjudication and plaintiffs do not have standing to sue.

Defendants vigorously contend: plaintiffs do not have standing to sue because they have no injury in fact or imminent risk of harm; they have failed to show how any concrete injury is causally connected to any of defendants' actions; and their claims are not redressable by a decision by this Court because they have not shown

---

[2] Rule 7.6(b) is titled "Internet Presence" and governs "[a]ll World Wide Web sites and home pages accessed via the Internet that are controlled, sponsored, or authorized by a lawyer or law firm and that contain information concerning the lawyer's or law firm's services."

[3] Rule 7.6(c) is titled "Electronic Mail Communications," and applies to unsolicited electronic mail communications to a prospective client for the purpose of obtaining professional employment.

[4] Rule 7.2 is titled "Communications Concerning A Lawyer's Services" and contains the requirements for what may or may not be contained in advertisements and unsolicited written communications, as well as disclosure requirements.

that their advertisements would comply with the other new lawyer advertising Rules. They add that Public Citizen lacks associational standing because it has failed to identify a willing speaker who would otherwise have standing and alleges only a generalized grievance.

Defendants add that plaintiffs have not submitted any advertisements to the LSBA for review, the LSBA has not found any of their advertisements to be non-compliant, and none of the defendants have threatened disciplinary action against any of the plaintiffs under the new Rules. They characterize plaintiffs' concerns as merely a subjective fear that their future advertisements will violate the Rules once they become effective October 1, 2009. Thus, they urge, this matter is not ripe for adjudication.

Finally, defendants argue that the Rules only prohibit content and methods that are inherently misleading, which they are constitutionally permitted to regulate. The also argue that, even if the Court finds the restricted advertising is not inherently misleading, the Central Hudson test validates the constitutional integrity of the Rules because: the State has a substantial interest in the Rules; the Rules directly and materially advance the State's substantial interest; and the Rules are in reasonable proportion to the interests served (they are as narrowly drawn as possible).

In the summary judgment motion against the Wolfe plaintiffs, defendants assert that the overbreadth doctrine does not apply to commercial speech, and, therefore, cannot be the basis of invalidating these Rules; prior review of lawyer advertisements is not a prior restraint on speech; and the Rules only apply to commercial speech.

The plaintiffs counter and stress that they do have standing to contest the Rules because, importantly, their injury is one of self-censorship, which is sufficient for standing in a First Amendment context. Further, plaintiffs argue that the defendants have not submitted sufficient evidence to show that the attorney advertising is misleading or deceptive. They contend for an actual deception threshold and, from that, conclude that the Rules fail the <u>Central Hudson</u> test.

The Wolfe plaintiffs argue that the Rules' Internet provisions violate <u>Central Hudson</u> because there is no evidence the provisions are necessary, they were not narrowly drawn, and they are unconstitutionally vague. More significantly, they point out that the studies the Committee looked at contained no questions about attorney advertising on the Internet, and the Committee had no other evidence that Internet advertising is misleading or otherwise requires regulation. They draw attention to the differences between Internet ads and other advertising media.

## I. STANDARD

### A. Motion to Dismiss

Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure govern dismissals for lack of subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). In determining whether jurisdiction exists, the Court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. Clark v. Tarrant County, 798 F.2d 736, 741 (5th Cir. 1986). Federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim "arises under" federal law is determined by examining the allegations of what must be a well-pleaded complaint. See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). And the federal question must appear on the face of the complaint. See Tores v. Southern Peru Copper Corp., 113 F.3d 540, 542 (5th Cir. 1997) (citations omitted).

A motion to dismiss under Rule 12(b)(1) requires that the Court only examine whether it has jurisdiction to hear the case; it does not call for intrusion into the merits of the claim. See Bell v.

<u>Hood</u>, 327 U.S. 678, 682 (1946). "Jurisdiction, therefore, is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." <u>Id.</u> Dismissal for lack of subject-matter jurisdiction "is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." <u>Steel Company v. Citizens for a Better Environment</u>, 523 U.S. 83, 89 (1998) (internal quotations omitted).

### B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. <u>See</u> <u>id.</u> Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is

appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II. JUSTICIABILITY

Article III of the United States Constitution restricts federal judicial power to cases and controversies. This Court must determine "whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Babbit v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). The plaintiffs bear the burden of establishing standing and ripeness under Article III. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006); Miss.

12

State Democratic Party v. Barbour, 529 F.3d 538, 545 (5th Cir. 2008).

A. Standing of Lawyer/Law Firm Plaintiffs

To establish standing, plaintiffs must answer to three factors: (1) an injury in fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection - an injury that is fairly traceable to the challenged conduct; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Plaintiffs must show standing, even in a facial challenge to a statute because "a litigant only has standing to vindicate his own constitutional rights." Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 788 (1984); but see Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 392-93 (1988) ("[I]n the First Amendment context, litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."). In a suit challenging the legality of government action or inaction, if the plaintiff is himself an object of the action, "there is ordinarily little question that the action . . . has caused him injury, and

13

that a judgment preventing . . . the action will redress it."
<u>Lujan</u>, 504 U.S. at 561-62.

## 1. Injury in Fact

"The loss of First Amendment freedoms," the Fifth Circuit instructs, "for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Croft v. Governor of Texas</u>, 562 F.3d 735, 745 (5th Cir. 2009) (quoting <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976)). One who is challenging a statute "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement[;] . . . one does not have to await the consummation of threatened injury to obtain preventive relief." <u>Babbitt</u>, 442 U.S. at 298. Plaintiffs draw attention to the need for self-censorship. In the freedom of speech context, a harm of "self-censorship . . . can be realized even without an actual prosecution." <u>Am. Booksellers</u>, 484 U.S. at 393. "Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." <u>Houston Chronicle Publ'g Co. v. City of League City, Texas</u>, 488 F.3d 613, 618 (5th Cir. 2007). "A credible threat of present or future prosecution is an injury sufficient to confer standing, even if there is no history of past enforcement." <u>Rangra v. Brown</u>, 566 F.3d 515, 519 (5th Cir. 2009). Fifth Circuit literature on this point takes a generous view. The phrase "credible threat of prosecution is quite forgiving. When dealing with statutes that

facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." <u>Id.</u>; <u>see Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves</u>, 601 F.2d 809, 818 (5th Cir. 1979) (holding that a justiciable controversy exists when "the plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure").

The lawyer and law firm plaintiffs meet the injury requirements in this case. Plaintiffs' affidavits state that they are currently running advertisements containing specific elements that violate the amended Rules, including non-authentic scenes, actors playing clients, and slogans that imply success or effectiveness. They have asserted that they will have to continue self-censoring their advertising if the Rules go into effect, and, but for the Rules, they would continue running ads containing elements prohibited by the Rules.

The defendants' submission that plaintiffs refer only to hypothetical and unspecified advertisements is contradictory to the record: the plaintiffs have noted specific advertising campaigns, slogans, and advertising techniques they currently use that would violate the Rules. This is in rather stark contrast to the recent Florida decision which defendants emphatically invoke, <u>Harrell v. Florida Bar.</u>, Case No. 3:08-cv-15-J-34TEM (M.D. Fla. Mar. 31,

2009).  In that case, the plaintiffs had not explained which ads
would be effected by the challenged lawyer advertising Rules or how
they would violate them.  Id.

Additionally, the plaintiffs have established a "credible
threat" of enforcement.  As the Fifth Circuit noted in Krishna, "we
are probably entitled to assume that law enforcement agencies will
not disregard such a recent expression of the legislature's will."
601 F.2d at 821 ("[T]he probability of enforcement is not relevant
to a court's jurisdiction over an anticipatory challenge."); Am.
Booksellers, 484 U.S. at 393 ("We are not troubled by the pre-
enforcement nature of this suit.  The state has not suggested that
the newly enacted law will not be enforced, and we see no reason to
assume otherwise.").  The defendants' argument that the plaintiffs
have not received a notice of non-compliance or applied for an
advisory opinion from the LSBA Committee to determine the
compliance of their ads misses the point; the Rules themselves note
that "[a] finding by the Committee of either compliance or
noncompliance shall not be binding in a disciplinary proceeding."
Rule 7.7(h).  As has been repeatedly reiterated, the plaintiffs
need not await condemnation before presenting a challenge to what
they assert are per se infirmities of the Rules.

## 2. Causation

The causation requirement for standing is also satisfied.  The
plaintiffs must show that their injuries are "fairly traceable" to

the challenged conduct. <u>Lujan</u>, 504 U.S. at 560. They have done so. The defendants are responsible for attorney discipline in Louisiana. Although defendants correctly note they neither proposed nor approved the Rules, they would be the authorized ones to institute disciplinary proceedings about a violation of the Rules. Because plaintiffs' injuries implicate a credible fear of being charged with violating the Rules, they have established the requisite causal connection.

### 3. Redressability

It follows that a favorable ruling in this case would be likely to redress plaintiffs' claim of injuries. If this Court ruled in the plaintiffs' favor, the defendants would be prohibited from pursuing disciplinary proceedings against the plaintiffs for violating the Rules in their pursuit of clients by advertising. Plaintiffs are thus made to self-censor their advertisements because of the challenged Rules. Invalidating these Rules would remove the threat of accusations of violations of the challenged Rules and redress their injury. <u>See</u> <u>Fed. Election Comm'n v. Akins</u>, 524 U.S. 11, 25 (1998); <u>Lujan</u>, 504 U.S. at 561-62.

### B. Associational Standing of Public Citizen

Associations have standing to bring suit on behalf of their members when: (1) "its members would otherwise have standing to sue in their own right;" (2) "the interests [the association] seeks to protect are germane to the organization's purpose;" and (3)

"neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.</u>, 517 U.S. 544, 553 (1996).

Public Citizen fulfills each test.  Public Citizen, it is undisputed, is a nonprofit public interest organization with 270 members in Louisiana, whose stated mission includes a claim to protect consumer rights and freedom of speech.  The plaintiffs allege that the State's restrictions on lawyer advertising injure Public Citizen's Louisiana members, who are consumers of lawyer services, by preventing them from receiving information that they have an interest in receiving.  The United States Supreme Court has recognized that the First Amendment not only guarantees a right to speak, but also protects the "right to receive information and ideas."  <u>Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council</u>, 425 U.S. 748, 757 (1976).  In <u>Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council</u>, the Court overturned regulations that restricted the right of pharmacists to advertise drugs; the challenge was undertaken by a consumer group representing their members' right to receive commercial drug advertisements.  <u>Id.</u> at 754 n.10.  The Court noted, "[i]f there is a right to advertise, there is a reciprocal right to receive the advertising, and it may be asserted by these [plaintiffs]."  <u>Id.</u> at 757; <u>see also</u> <u>Am. Booksellers</u>, 484 U.S. at 643 (holding that the

plaintiff, an association, had standing in a First Amendment challenge to represent the rights of bookbuyers to receive information).

Similarly, Public Citizen comes to Court asserting the right of its members to receive lawyer advertising. For the same reasons discussed above, they will suffer an injury if these Rules unconstitutionally restrict the ability of lawyers to communicate and advertise their services to consumers. Therefore, Public Citizen's members would have standing to challenge the Rules. Further, the challenge is informed by Public Citizen's asserted goals of ensuring that its members are not restricted from receiving communications and truthful advertising regarding the availability of lawyer services. Finally, neither the claim nor the relief requested requires the participation of an individual member.

## C. Ripeness

"A court should dismiss a case for lack of ripeness," we are reminded, "when the case is abstract or hypothetical." Miss. State Democratic Party, 529 F.3d at 545 (quoting Monk v. Huston, 340 F.3d 279, 282 (5th Cir. 2003)). The two key considerations for a ripeness determination are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Roark & Hardee LP v. City of Austin, 522 F.3d 533, 545 (5th Cir. 2008). "A case is generally ripe if any remaining

19

questions are purely legal ones . . . ." <u>Id.</u> Ripeness and standing share a kinship, particularly in "the shared requirement that the injury be imminent rather than conjectural or hypothetical." <u>Miss. State Democratic Party</u>, 529 F.3d at 545.

This case is patently ripe for adjudication. The issues presented to this Court are "purely legal" and "further factual development of the issues" would not aid the Court in its determination. <u>See</u> <u>Ohio Forestry Ass'n v. Sierra Club</u>, 523 U.S. 726, 733 (1998). The defendants would obfuscate the point by drawing attention to requirements for an "as-applied" challenge to the Rules. However, the plaintiffs' challenge is facial; the Court need only inquire as to whether the Rules pass constitutional muster, a textual and historical exercise. Further, the plaintiffs have asserted injury sufficient to establish hardship if the Court delays adjudication. The Supreme Court instructs that requiring a regulated party "to proceed without knowing whether the [statute] is valid would impose a palpable and considerable hardship." <u>Thomas v. Union Carbide Agric. Products Co.</u>, 473 U.S. 568, 581 (1985).

## III. THE FIRST AMENDMENT

The United States Supreme Court first recognized that commercial speech is protected by the First Amendment in <u>Virginia State Board of Pharmacy</u> in 1976. 425 U.S. at 770. The Court recognized that some regulation of commercial speech is "clearly

permissible," but cautioned also that a state "may not do so by keeping the public in ignorance" of truthful information.  <u>Id.</u>  The High Court has pointedly commented that commercial speech is afforded "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment protections, . . . allowing modes of regulation that might be impermissible in the realm of noncommercial expression."  <u>Ohralik v. Ohio State Bar Assoc.</u>, 436 U.S. 447, 457 (1978).  The Court specifically applied First Amendment protections to attorney advertising in <u>Bates v. State Bar of Arizona</u>, holding that "advertising by attorneys may not be subjected to blanket suppression," but reiterating that advertising by attorneys may still be regulated in some ways.  433 U.S. 350, 383 (1977).

"For commercial speech to come within [the First Amendment's protections], it at least must concern lawful activity and not be misleading."  <u>Bd. of Trustees of the State Univ. of N.Y. v. Fox</u>, 492 U.S. 469, 475 (1989).  The Supreme Court has focused and made essential the integrity of the information: "Because disclosure of truthful relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information, only false, deceptive, or misleading commercial speech may be banned."  <u>Ibanez v. Fla. Dep't Of Bus. And Prof'l Regulation, Bd. of Accountancy</u>, 512 U.S. 136, 142 (1994) (internal citations omitted).  Therefore, "truthful advertising related to

lawful activities is entitled to the protections of the First Amendment," but "[m]isleading advertising may be prohibited entirely." In re R.M.J., 455 U.S. 191, 202-03 (1982); see also Fla. Bar v. Went For It, Inc., 515 U.S. 618, 624 (1995)). However, "States may not place an absolute prohibition on certain types of potentially misleading information . . . if the information also may be presented in a way that is not deceptive." In re R.M.J., 455 U.S. at 203. If a form of advertising is not misleading, or is only potentially misleading, under the test first articulated in Central Hudson Gas & Electric Corp. v. Public Service Commission, states may regulate if they articulate a substantial interest in doing so, if the regulation is narrowly drawn, and if the challenged interference with speech is in proportion to the interest served. Id. (citing Central Hudson, 447 U.S. 557, 563-64 (1980)).

This Court must decide first if the advertising that the Rules target is either inherently misleading or has been proven to be misleading; if so, the state may "freely regulate" it. Went for it, 515 U.S. at 623-24. If the advertising is not misleading, or is only potentially misleading, this Court must then apply the Central Hudson test to determine if the restrictions are narrowly tailored to further a substantial government interest, making regulation still permissible. In making these determinations, the Court notes that "[i]t is well established that 'the party seeking

to uphold a restriction on commercial speech carries the burden of justifying it.'" <u>Edenfield v. Fane</u>, 507 U.S. 761, 770 (1993) (quoting <u>Bolger v. Youngs Drug Products Corp.</u>, 463 U.S. 60, 71 n.20 (1983)). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." <u>Id.</u> at 770-71. The Fifth Circuit has held that evidence used to justify the state's regulation need not exist pre-enactment. <u>Pruett v. Harris County Bail Bond Bd.</u>, 499 F.3d 403, 410 (5th Cir. 2007).

A. Misleading or Deceptive Advertising

If the State can show that the subject advertising is "inherently likely to deceive" or has produced a "record indicat[ing] that a particular form or method of advertising has in fact been deceptive," it is entitled to prohibit that advertising. <u>In re R.M.J.</u>, 455 U.S. at 202. Commercial speech is misleading when it is "inherently likely to deceive the public" and if it "is devoid of intrinsic meaning." <u>Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n</u>, 24 F.3d 754, 756 (5th Cir. 1994) (quoting <u>Peel v. Attorney Registration and Disciplinary Comm'n of Ill.</u>, 496 U.S. 91, 112, 121 (1990)).

In support of their contentions that the advertising sought to be regulated under the Rules is misleading, the defendants point to

the LSBA's Findings and Recommendations. These findings were submitted to the Louisiana Supreme Court in April 2009 to report the results from the surveys conducted in December 2008 and January 2009 that gathered information about public perceptions of lawyer advertising in Louisiana. The LSBA Findings refer to survey results from LSBA members and the general public.

A staple of the plaintiffs' argument is that the Rules are nothing more than political platitudes. This argument, however, is betrayed both by this Court's textual and historical analysis.

## 1. Rule 7.2(c)(1)(D): References or Testimonials to Past Results

Reference to past results, even if truthful, the surveys reflect, could also be inherently misleading. The LSBA Findings are impressive. And the defendants point out that the Rules do not prohibit "truthful testimonials," such as "John Smith is my lawyer. He was responsive to my needs and helped me with my legal problems."[5]

---

[5] The LSBA Findings point out the following survey results: "eighty-three (83%) percent of the public interviewed and sixty (60%) percent of LSBA members interviewed indicated that they 'disagreed' with the statement that 'client testimonials in lawyer advertisements are completely truthful,' while seventy-two (72%) of LSBA members interviewed 'agreed' with the statement that 'client testimonials imply that the endorsed attorney can obtain a positive result without regard to facts or law.'" These findings do not specifically reference statements about past results, but such statements would seem to cause an attitude of even greater reliance by those seeking lawyers, whether the public or other referring lawyers.

## 2. Rule 7.2(c)(1)(E): Communications that Promise Results

The Court finds that Rule 7.2(c)(1)(E)'s prohibition of communications that promise results regulates only speech that is inherently misleading. As plaintiffs acknowledge, a promise of prevailing in a particular case is deceptive and untruthful; no one can predict a future result. The plain text of the Rule prohibits only communications that are inherently misleading and untruthful: those that promise results that no one can predict. Therefore, the defendants may freely regulate this type of advertising.[6]

## 3. Rules 7.2(c)(1)(J): Portrayal of a Judge or a Jury[7]

The Court agrees that a portrayal of a judge or jury in an ad is inherently misleading. The defendants point to survey and anecdotal evidence that the portrayal of a judge or jury in an ad does not enhance the public's confidence in the Louisiana court system. While another survey question revealed that 59% of the public felt that those advertisements implied that Louisiana courts can be manipulated by the lawyers in the ads, only 27% of the

---

[6] The plaintiffs speculate that certain slogans and phrases will be interpreted to "promise results," resulting in an unconstitutional application of the Rule. However, the plaintiffs have not submitted any advertising language to the LSBA Committee that has been ruled out-of-bounds; as such, the Court can only look at the language of the Rule, not its hypothetical application.

[7] The defendants also refer to Rule 7.2(c)(1)(I) in their discussion about misleading advertisements. However, they argue merely that the LSBA committee determined reenactments of events or portrayal of a client by a non-client to be potentially misleading. As noted, a "potentially misleading" advertisement must be evaluated under the <u>Central Hudson</u> test.

public agreed with the statement that seeing a judge or jury in an advertisement implies that a lawyer has more influence on Louisiana courts than other lawyers. In spite of some inconclusive aspects in these surveys on this point, the fact remains, and is inescapable, that such material simply conveys an untrue message. It is compellingly misleading. This Court should not speculate on which recipients of such messages are smart enough to know better.

### 4. Rule 7.2(c)(1)(L): Use of Mottos that State or Imply An Ability to Obtain Results

While this Rule appears similar to the prohibition on promises of results, there is one major difference: the Rule also prohibits mottos and trade names that <u>imply</u> results. This does not limit enforcement to such advertising techniques that are inherently misleading - those that promise results - but also creates an unidentified grouping of advertisements for which it is unfair to determine whether they are misleading. As such, this Rule must be evaluated under the <u>Central Hudson</u> test.

### B. <u>Central Hudson</u> Test

Absent material that is inherently misleading, the State may also regulate commercial speech if it satisfies the three-prong <u>Central Hudson</u> test: (1) the State must assert a substantial interest in support of the regulation; (2) the State must demonstrate that the restriction on commercial speech directly and materially advances that interest; and (3) the regulation must be narrowly drawn. <u>Went For It</u>, 515 U.S. at 624 (citing <u>Central</u>

26

<u>Hudson</u>, 447 U.S. at 564-65).

## 1. Substantial Interest

The Supreme Court "has given consistent recognition to the State's important interests in maintaining standards of ethical conduct in the licensed professions," <u>Edenfield v. Fane</u>, 507 U.S. 761, 770 (1993); it has also expressed some reservation whether "the State's desire that attorneys maintain their dignity in their communications with the public is an interest substantial enough to justify the abridgment of their First Amendment rights." <u>Zauderer</u>, 471 U.S. at 648. But, the High Court has "recognize[d] that the States have a compelling interest in the practice of professions within their boundaries, . . . [and the] interest of the States in regulating lawyers is especially great since lawyers are essential to the primary government function of administering justice, and have historically been 'officers of the courts.'" <u>Goldfarb v. Va. State Bar</u>, 421 U.S. 773, 792 (1975).

Underscoring their attack of politics and platitudes, the plaintiffs argue that the State has not articulated a substantial interest in restricting lawyer advertising with the Rules. This Court disagrees. Supreme Court precedent, while mixed, also disagrees. The State may not by scatter-shot condemn lawyer advertising, but does indeed have a substantial interest in addressing the ethical standards of the profession, as well as in preventing public confusion or deception. <u>Edenfield</u>, 507 U.S. at

769 (noting that the State's "interest in ensuring the accuracy of commercial information in the marketplace is substantial"); <u>see also</u> <u>Va. State Bd. of Pharmacy</u>, 425 U.S. at 721-722 ("The First Amendment . . . does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely."). The State therefore articulates a substantial interest in both maintaining the standards of the legal profession and in protecting consumers from misleading or deceptive advertising.[8]

### 2. Advancing that Interest and Being Narrowly Drawn

The State must demonstrate that the challenged regulation advances a governmental interest "in a direct and material way." <u>Went For It</u>, 515 U.S. at 625 (citing <u>Rubin v. Coors Brewing Co.</u>, 514 U.S. 476, 487 (1995)). That burden cannot be "satisfied by mere speculation or conjecture;" rather, the State must show that the harms are real and the "restriction will in fact alleviate them to a material degree." <u>Id.</u> at 626. The Supreme Court has required evidentiary support in the forms of empirical data or anecdotes to support the State's regulation. <u>See</u> <u>Edenfield</u>, 507 U.S. at 771 (invalidating regulations when the governmental body presented no studies or anecdotal evidence, and only relied on a "series of

---

[8] Plaintiffs are correct that because an advertisement is "potentially misleading" is not of itself a sufficient justification to support a general ban on advertising without fulfilling the other <u>Central Hudson</u> factors. The State does, however, have a substantial interest in ensuring that the public is not misled.

conclusory statements" to justify the regulations). Empirical data
need not be "accompanied by a surfeit of background information,"
and the regulation can be justified "by reference to studies and
anecdotes pertaining to different locales altogether," or can be
"based solely on history, consensus, and simple common sense."
<u>Went For It</u>, 515 U.S. at 628. In short, the State must demonstrate
some basis for its regulation with evidentiary support. It has
done so. To be "narrowly drawn" in the commercial speech context,
the regulation need not be the "least restrictive means" of
advancing the State's interest. <u>Went For It</u>, 515 U.S. at 632.
Instead, there must be "a reasonable fit" between the State's
interest and the means chosen to accomplish those ends. <u>Id.</u> They
should be "no more extensive than reasonably necessary to further
substantial interests," <u>Fox</u>, 492 U.S. at 477, and "in proportion to
the interest served," <u>Went For It</u>, 515 U.S. at 633.

<em>i. Rule 7.2(c)(1)(D):<br>Testimonials and References to Past Results</em>

The defendants, who carry the burden of proving that the Rules
directly and materially advance the State's interest, point to the
survey results that target the public's perception of testimonials.
Those results ably and statistically support the State's position.[9]

---

[9] <u>See</u> <u>supra</u> note 5.

### ii. Rules 7.2(c)(1)(I), 7.5(b)(2)(C), and 7.2(c)(10)
*Non-authentic scenes, portrayal of a client by a non-client, or use of a spokesperson without a disclaimer*

The Rules governing the use of events, scenes, or pictures that are not authentic, portrayals of a client by a non-client, and use of a non-lawyer spokesperson, condone each of these advertising techniques as long as they include a disclaimer as provided by Rule 7.2(c)(10). The disclaimer provision requires that written disclaimers be in a print size at least as large as the largest print size used in the advertisement, spoken disclosures be spoken at the same or slower rate of speed as the other spoken content of the advertisement, and all disclosures used in advertisements that are televised or displayed electronically shall be both spoken aloud and written legibly. Additionally, when a spokesperson is used, a spoken and written disclosure must identify the spokesperson as such, that the spokesperson is not a lawyer, and that the spokesperson is being paid to be a spokesperson, if paid.

The Supreme Court advises that there are "material differences between disclosure requirements and outright prohibitions on speech." <u>Zauderer</u>, 471 U.S. at 650. "Warnings or disclaimers" as safeguards "might be appropriately required in order to dissipate the possibility of consumer confusion or deception." <u>Id.</u> at 651. At the same time, the Supreme Court also admitted "that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling the protected commercial speech." <u>Id.</u> The

Court then held that "an advertizer's rights are adequately protected as long as the disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." Id.

The LSBA learned that 63% of the LSBA members and 59% of the public disagreed with the statement that they can always tell if a testimonial in a lawyer advertisement is made by a client and not an actor. This Court emphasizes that such dramatizations are in and of themselves capable of unintended guile or delusion.

The remaining survey results focus on the use of disclaimers in advertising. Those results, particularly the anecdotal evidence, indicate that the public finds lawyer advertising that uses disclaimers to be less truthful and more misleading than advertising that doesn't use disclaimers.[10] The Supreme Court in Zauderer noted the benefits of disclaimers, and this Court believes such disclaimers would have a beneficial purpose.[11]

The LSBA surveys reflect that the public and LSBA members have

_____

[10] Forty-five (45%) percent of the public thought the use of disclaimers in lawyer advertising was "less truthful" than the use of disclaimers in advertising for other businesses. The focus groups reported such responses as "I think it's very misleading" for lawyers to use disclaimers; "Don't say anything that MAKES you put a disclaimer;" "It gives you a positive image, but when you read the fine line you get wiped out."

[11] The Supreme Court held a disclaimer in Ibanez, however, to be unconstitutionally restrictive when "the detail required in the disclaimer . . . effectively rule[d] out [the desired advertising] on a business card or letterhead, or in a yellow page listing." 512 U.S. at 146-47.

less confidence in the integrity of lawyers that use advertisements that include scenes of accidents or accident victims. Although the survey did not differentiate between authentic scenes and portrayals of such scenes, and while the Rules only prohibit non-authentic scenes and reenactments, reason dictates that this might be looked upon as a distinction without a difference.

Therefore, the Court finds that Rule 7.2(c)(1)(I) does not violate the First Amendment, nor do the written disclaimer requirements of Rule 7.2(c)(10).

The LSBA Findings, however, do not support the additional disclosure requirements for a spokesperson under Rule 7.5(b)(2)(C). The survey results teach that 62% of the public disagreed that lawyers whose advertisements include endorsements by a celebrity have more influence on Louisiana courts than other lawyers. Therefore, the Court finds that because of lack of evidentiary support, Rule 7.5(b)(2)(C) fails the commands of Central Hudson, does not directly and materially advance the State's interests, and, therefore, violates the First Amendment.

### iii. Rule 7.2(c)(1)(J)
### Portrayal of a Judge or Jury

The Court also finds that the defendants have produced sufficient evidence to show that Rule 7.2(c)(1)(J)'s regulation of portrayals of a judge or jury in an advertisement directly and materially advances the State's interests. The LSBA Findings point to survey results that show that 27% of the public and 50% of LSBA

32

members agreed that advertisements that portray a judge or jury imply to the public that the lawyer can assert more influence over judges or juries than other lawyers. Sadly, 59% of the public indicated that those lawyer ads imply that Louisiana courts can be manipulated by the lawyers in the ads. Further, public opinion and LSBA member opinion supports the conclusion that such ads reduce confidence in Louisiana courts. The anecdotal evidence adds further support; comments from the focus group included: "You're saying 'I can get this through the court system.' Like you got a hold on somebody down the river;" "It does seem he would manipulate the system more;" "It gives the impression that the judge could be bought by this attorney." The Court finds that, with this evidence, the Rule on the portrayal of judges and juries directly and materially advances the State's interest in maintaining the standards of the legal profession, as well as protecting against the deception of the public.[12]

*iii. Rule 7.2(c)(1)(L)*
*Mottos, trade names that state or imply an ability to get results*

The Court finds that Rule 7.2(c)(1)(L) materially advances the State's interest in preventing deception of the public, and is

---

[12] But see Alexander v. Cahill, No. 07-117, 2007 WL 2120024, at *8 (N.D.N.Y. July 23, 2007) (invalidating a restriction on portrayals of judges in attorney advertising on the grounds that the restriction was not narrowly tailored). However, many of the rules in Cahill differ from those before this Court, and, more telling, the evidence of the ruling body's investigation was far less conscientious, indeed skimpy, than what the LSBA ambitiously and patiently undertook.

narrowly tailored to achieve those ends.  The defendants point to survey results that reveal the public may be deceived by mottos or trade names that state or imply an ability to get results; specifically, 61% of the public agreed that example statements promised that the lawyer will achieve a positive result.  56% of the public believed lawyer advertising in Louisiana is misleading, and 61% of the surveyed public believe that lawyer advertising is less truthful than advertisements for other businesses.  Therefore, this regulation, aimed at prohibiting lawyers from using mottos or slogans that imply to the public that they can achieve results when future results can never be predicted, directly and materially advances the State's interests.

The Court is unpersuaded that the Rule could be made even narrower.  The Rule includes those mottos and trade names that "imply" results.  While the least restrictive means need not be utilized, the State must ensure that the restricted speech is proportional to the State's interest.  Here, the State's interest is of serious proportions: maintaining professional dignity and public confidence.  Plaintiffs' characterization of Louisiana lawyers as members of an "industry", rather than a profession, seems to enhance the State's regulatory interest in the current lawyer advertising culture.  The defendants point to the availability of advisory opinions; and although such opinions are not binding on the disciplinary board, they provide helpful

guidance.

The Court finds Rule 7.2(c)(1)(L) could not be more narrowly tailored and prevails over the plaintiff's attack.

*iv. Rule 7.6: Computer-Accessed Communications*

The Wolfe plaintiffs challenge several aspects of the Rule governing computer-accessed communications, but focus their discussion in this motion on the disclosure requirements of Rule 7.2 as noted in Rule 7.6(d).[13]  Rule 7.6(d) is titled "Advertisements," and requires that "All computer-accessed communications concerning a lawyer's or law firms services, other than those subject to subdivisions (b) [law firm websites] and (c) [unsolicited e-mails] of this Rule, are subject to the requirements of Rule 7.2 when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain."  The Wolfe plaintiffs' primary argument is that this requirement is incompatible with a form of online advertising known as "pay-per-click" ads.[14]  They assert that

_____

[13] The Wolfe plaintiffs challenge Rule 7.6(c)(3) in their complaint, which requires unsolicited e-mail communications to state "LEGAL ADVERTISEMENT" in the subject line.  They do not, however, address this argument in their motion.  Further, the defendants point out that this Rule is similar to a rule in the previous lawyer advertising requirements.  The Wolfe plaintiffs also challenge Rule 7.2(c)(11), which provides that "[n]o lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm."  Again, the Wolfe plaintiffs do not address this Rule in their motion for summary judgment.  Thus, their attack does not reach those Rules.

[14] As described in the Wikipedia article submitted by the Wolfe plaintiffs, "pay-per-click is an Internet advertising model used on search engines, advertising networks, and content sites,

the defendants have produced no evidence that this requirement directly advances the State's interests and that it is not narrowly tailored.

This Court agrees. The defendants point to no empirical or anecdotal evidence relating to online attorney advertising. They have not shown that the State studied online advertising techniques or methods and then attempted to formulate a Rule that directly advanced the State's interests and was narrowly tailored with respect to Internet advertising. Instead, the State, through its high court, simply applied the same Rules as those developed for television, radio, and print ads to Internet advertising. This Court is persuaded that Internet advertising differs significantly from advertising in traditional media. The Supreme Court has recognized the uniqueness of the Internet as compared to other broadcast media: "the Internet is not as 'invasive' as radio or television." <u>Reno v. Am. Civil Liberties Union</u>, 521 U.S. 844, 868-69 (1997). While that Court's later comment that communications do not "appear on one's computer screen unbidden" may not be relevant here, when pop-up ads do exactly that, the premise still remains valid: that the Internet presents unique issues related to advertising, which the State simply failed to consider in formulating this Rule. This Court cannot say that Rule 7.6(d)

───────────────────

such as blogs, in which advertisers pay their host only when their ad is clicked." Pay-per-click ads limit the space available to advertisers to display their message.

directly and materially advances the State's interests or is narrowly tailored; the defendants have presented no evidence to that effect. Because they have not met their burden, Rule 7.6(d) is unconstitutional.

The Wolfe plaintiffs also challenge the application of Rule 7.7 to Internet advertising, which requires that advertisements that are not exempt under Rule 7.8 must be filed for approval prior to or concurrently with the lawyer's first dissemination of the advertisement. Rule 7.8 exempts from filing certain advertisements and announcements, including those that only include the information listed in Rule 7.2(b).[15] The Wolfe plaintiffs state that the fee for each filing is $175, which would be prohibitively expensive for the nature of Internet advertising. They provide a compelling example: the Wolfe Law Group ran pay-per-click ads during the months of April, May, and June, spending a total of $160.63 with Google (the "leader" in such advertising). They ran approximately 12 total ad variations, which would have required 12 separate filings with the LSBA, and would have cost the firm approximately $2,100. The LSBA Findings note that the plaintiffs

---

[15] Rule 7.2(b) permits the following information: Names of lawyers and contact information; dates related to school graduation, Bar membership, and employment; membership in the Louisiana State Bar Association sections or committees; technical and profession licenses; military service; foreign language ability; fields of law; prepaid or group legal service plans; fee for initial consultation and fee schedule; common salutary language; punctuation marks; and photographs of lawyer or lawyers who are employed at the firm.

need not submit each advertisement to the LSBA for approval, if the ad complies with the permissible content in Rule 7.2(b).  However, again, neither the LSBA Findings nor the defendants address the unique considerations with Internet advertising, specifically, the short length of ads and the multiple variations used, each of which would be required to be filed as a unique advertisement.  As such, the application of Rule 7.7 to Internet advertising is not supported by sufficient evidence.  Therefore, Rule 7.7 as it applies to the filing requirements for Internet advertising is unconstitutional.

Accordingly, the defendants' motion to dismiss is DENIED; the defendants' motions for summary judgment are GRANTED IN PART and DENIED IN PART; the Public Citizen plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART; and the Wolfe plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

IT IS ORDERED: that the defendants' summary judgment motions are GRANTED as to Rules 7.2(c)(1)(D), 7.2(c)(1)(E), 7.2(c)(1)(I), 7.2(c)(1)(J), 7.2(c)(1)(L), 7.2(c)(10), 7.2(c)(11), and 7.6(c)(3), and DENIED in all other respects.

IT IS FURTHER ORDERED: that the Public Citizen plaintiff's motion for summary judgment is GRANTED as to Rule 7.5(b)(2)(c)  and DENIED in all other respects.

IT IS FURTHER ORDERED: that the Wolfe' plaintiffs' motion for summary judgment is GRANTED as to Rule 7.6(d) and 7.7 (as it pertains to filing requirements for Internet advertising) and DENIED in all other respects.[16]

New Orleans, Louisiana, August 3, 2009.

_____
MARTIN C. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[16] The Court expresses no opinion regarding the First Amendment integrity of the proposed Internet Rules. If the Louisiana Supreme Court wishes to pursue an appropriate administrative process regarding regulation of Internet advertising and then return to an examination of lawyer advertising on the Internet, the high court has the authority to do so, consistent with this Court's opinion.